## UNITED STATES v. BEINER et al.

(District Court, W. D. Pennsylvania. September 7, 1921.)

No. 5187.

1. **Criminal law ⬅️242(4)—Indictment must charge offense to authorize removal of prisoner to another district.**

   To authorize a judge to order a federal prisoner to be removed to another district to answer to an indictment therein under Rev. St. § 1014 (Comp. St. § 1674), he must determine that the indictment is sufficient, and charges an offense.

2. **Conspiracy ⬅️43(5)—Charge in indictment cannot be aided by statement of overt acts.**

   An insufficient charge of conspiracy in an indictment cannot be aided by allegations of overt acts.

3. **Conspiracy ⬅️43(6)—Indictment held insufficient.**

   An indictment under Criminal Code, § 37 (Comp. St. § 10201), charging that defendants conspired to violate the National Prohibition Act, "in that they would unlawfully, willfully, and knowingly sell, barter, transport, deliver, furnish, and possess distilled spirits and intoxicating liquors otherwise than as authorized in the aforesaid act, * * * particularly title 2 thereof," *held* insufficient, as too indefinite to charge any offense.

At Law. On application by the United States for an order for the removal of Joseph Beiner and Max Srolovitz to another district to answer to an indictment therein. Denied.

The United States Attorney, for the United States.

William J. Brennen, of Pittsburgh, Pa., for defendant Beiner.

James Francis Burke, of Pittsburgh, Pa., for defendant Srolovitz.

ORR, District Judge. The United States attorney has asked for an order for the removal of the defendants above named from this district to the Northern district of Ohio, in order that they may there plead to an indictment found in that district. The proceedings were instituted under section 1014 of the Revised Statutes (Comp. St. § 1674), relating to the removal of persons charged with crime from one district to another for trial. The defendants were apprehended in this district and given a hearing before a United States commissioner, which was supplemented by a further hearing in this court upon the application for their removal.

[1] We recognize that under the law the function of the judge upon an application such as has been made in this case is not merely ministerial, but is judicial. Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689; Beavers v. Henkel, 194 U. S. 73-83, 24 Sup. Ct. 605, 606, 48 L. Ed. 882. And we have in mind what the learned Justice

Brewer said in the case last cited, that we should never forget "that in all controversies, civil or criminal, between the government and an individual, the latter is entitled to reasonable protection." The duty then rests upon us to determine whether or not there is an offense properly charged against the defendants, and whether or not there is probable cause to believe them guilty. In this case, if it should be found that an offense against the law is properly charged in the indictment found in the federal court for the Northern district of Ohio, we must find, under the evidence, that there is probable cause to believe the defendants guilty of the offense under the evidence taken before the commissioner and before this court. But as it will appear that no offense is properly charged against the defendants, it will necessarily follow that they should be discharged in this district, and not be required to answer the indictment in the Northern district of Ohio, wherein no crime is charged.

This brings us to the consideration of the indictment. The defendants Beiner and Srolovitz, together with 15 or more other persons, were charged with conspiracy to violate the National Prohibition Act (41 Stat. 305). The indictment was drawn under section 37 of the Criminal Code (Comp. St. § 10201) which provides that "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy," shall be punished. There is no doubt that every conspiracy to violate a criminal law of the United States is a crime within said section, and little doubt that a conspiracy to violate any law of the United States, criminal or not, is likewise within said section. In order, however, that men should be punished for crime, the indictment should give them information of the specific offense charged against them. If such information be not given defendants in an indictment, they do not know what evidence they must meet at the trial, and their plight is indeed bad, if they shall have prepared to meet the case of the government, as they understand it, and find that they are called upon to meet an entirely different case.

The indictment in this case charges that the defendants, through a period of time extending from January 16, 1920, to April 1, 1921, at Pittsburgh, in this district, and at several places in the Eastern division of the Northern district of Ohio, did "unlawfully, willfully, knowingly, and feloniously conspire," etc., "to commit an offense against the United States, to wit, to unlawfully, willfully, and knowingly violate the act of Congress," particularly title 2 thereof; said act being identified in detail, not only by its long title, but by its short title, "National Prohibition Act," and by its common title, "Volstead Act," "in that they would unlawfully, willfully, and knowingly sell, barter, transport, deliver, furnish, and possess distilled spirits and intoxicating liquor otherwise than as authorized in the aforesaid act of Congress, known as the 'National Prohibition Act,' and in violation of the provisions of the said 'National Prohibition Act.'" Thus is the conspiracy charge

275 F.—45

set forth in the indictment. Following the conspiracy charge in the said indictment, 29 separate, overt acts are charged to have been committed, each by one or more of the defendants.

[2, 3] It is not necessary or proper, perhaps, that we should refer to the averments with respect to the overt acts as they appear in the indictment, because they cannot aid in support of the indictment, if conspiracy be not sufficiently charged. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; Pettibone v. United States, 148 U. S. 197–202, 13 Sup. Ct. 542, 37 L. Ed. 419. There is a foundation in reason for such rule, because, after a conspiracy is formed, an overt act may be committed by one or more of the conspirators without the knowledge of the others. We must leave out of consideration, therefore, the offenses severally set forth in the overt acts, and confine ourselves to the conspiracy as charged, with particular attention to the manner in which it is charged the defendants intended to violate the act of Congress. The manner of violation intended by them, as set forth in the indictment, is "that they would unlawfully, willfully, and knowingly sell, barter, transport, deliver, furnish, and possess distilled spirits and intoxicating liquor otherwise than as authorized" in the said act of Congress, in violation of said act. The word "unlawfully" is a conclusion of the pleader, clearly, and the words "otherwise than as authorized" are a conclusion of the pleader. Between those conclusions may be found averments of fact.

A careful reading of the National Prohibition Act shows that the said act contemplates the sale, barter, transportation, delivery, furnishing, and possessing distilled spirits and intoxicating liquors. It is, of course, true that the act intends to surround such transactions with limitations and restraints affecting time, place, person, record, identification marks, and perhaps restrictions. Of course the rule must be recognized that, when the conspiracy charge is one to commit an offense, and that offense is clearly defined by statute, no high degree of particularity is required in describing it; but, where the statute describes many offenses, the particular offense denounced by the statute, and which defendants conspired to commit, ought to be particularly designated. The long title to the Volstead Act, as set forth in the indictment, is:

"An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote the use in scientific research and in the development of fuel, dye, and other lawful industries."

There is no suggestion in that title of a specific, particular offense denounced by Congress. It is true that the indictment, while charging the conspiracy to violate the act, contains a qualification, "particularly title 2 thereof," yet the charge is not limited to violations of title 2, and without such limitations proof of conspiracy to violate other portions of the act would sustain the indictment, provided that the violations related to the sale, barter, transportation, delivery, furnishing, and possessing distilled spirits and intoxicating liquor otherwise than as authorized in the act.

By reference to title 3 of the act, which relates to industrial alcohol, we find several offenses denounced therein, for which various punishments might be inflicted.

Title 2 of the act, which is particularly mentioned in the indictment, contains many prohibitions for which penalties may be inflicted. There is contained in section 4, title 2, a prohibition against the sale of flavoring extracts and other preparations for intoxicating beverage purposes. That section authorizes the manufacture of such preparations, but provides that the manufacturer shall procure permits, give bonds, keep records, and make reports. Section 6 in said title prohibits the manufacture, sale, purchase, transportation, or prescription of any liquor without obtaining a permit, except that a person may, without a permit, purchase and use liquor for medicinal purposes when prescribed by a physician, and except that any person who is conducting a hospital, etc., may, under prescribed rules, purchase and use in such institution liquor. Said section also prohibits the person, to whom a permit may be issued to manufacture, transport, import, or sell wines for sacramental purposes, from selling, bartering, exchanging, or furnishing any such to any person not duly authorized, nor to any such except upon an application subscribed by him. Section 7 prohibits a physician from prescribing liquor in excess of a pint to be taken internally for use by the same person within any period of ten days. Said section also requires the druggist to mark the prescription canceled and make the same part of a record which he is required to keep. It also requires the physician who issues a prescription to keep a record in a book, which shall show certain prescribed facts. Section 10 provides that no person shall manufacture, purchase for sale, sell, or transport without making at the time a permanent record of a certain kind described in said section. Section 12 provides that all persons manufacturing liquor for sale under the provisions of title 2 should attach to every container of such liquor a label containing certain statements. It further provides that all persons selling at wholesale shall attach to every package of liquor, when sold, a label setting forth certain facts. It provides, also, that the label shall be kept and maintained thereon until the liquor is used for the purpose for which said sale was authorized. Section 14 makes it unlawful for any person to use or induce any carrier to carry any package containing liquor without notifying the carrier of the character of the shipment, and further prohibits the carrier from transporting, and the consignee from receiving from the carrier, liquor, unless the package contains, on the outside, certain information. Section 15 makes it unlawful for any consignee to receive a package containing liquor, upon which appears a statement known to him to be false, and also for a carrier or other person to consign, ship, transport or deliver any such package knowing such statement to be false. Section 16 provides that it shall be unlawful to give a carrier an order requiring the delivery to any person, of any liquor when the purpose of the order is to enable any person, not the actual bona fide consignee, to obtain such liquor. Section 29 sets forth the penalties for the first and second offense of manufacturing or selling liquor in violation of the title, and further provides that any person violating the provisions of

any permit, or who makes any false report or affidavit required, or violates any of the provisions of title 2, for which offense a special penalty is not prescribed, shall be fined, etc.

It is unnecessary to consider other sections of title 2 of the act, for enough has been referred to to show that there are many separte offenses denounced thereby. Indeed, section 32 of the act itself, which provides that separate offenses may be united in separate counts, and the defendant may be tried on all at one trial, aids in the conclusion that Congress intended the said act to cover many offenses.

Now turning to the indictment, it seems as if the defendants could not know, from the conspiracy charge alone, which one of the various offenses the government charged them with conspiring to violate. For example, did they intend to sell, barter, transport, deliver, furnish, and possess liquors without permits, or, if they had permits, did they intend to sell, barter, transport, deliver, furnish, and possess liquors without the proper marks or labels on the packages? The conspiracy charge is specially indefinite, in that it does not charge that the spirits and intoxicating liquor which the defendants intended to sell, barter, transport, deliver, furnish, and possess was *"intended for beverage purposes."*

In Standard Encyclopædia of Procedure, vol. 5, p. 282, sub nom. "Conspiracy," we find the following statement:

"In accordance with the general rule, an indictment or information for conspiracy must set forth the essential elements of the offense with sufficient clearness and particularity to enable the accused to understand the nature of the charge against him, to prepare intelligently to meet it, and to plead the result, whether as conviction or acquittal, in bar of another prosecution for the same offense."

Many cases, including one or two that have been already cited, are to be found in the footnotes in that work. There is also found in the footnotes, the following quotation, there said to be from State v. Van Pelt, 136 N. C. 633, 49 S. E. 177, 68 L. R. A. 760, 1 Ann. Cas. 495:

"No offense is so easily charged and so difficult to be met, unless the defendants are fully informed of the facts upon which the state will rely to sustain the indictment. While technical objections to indictments are not to be sustained, substantive and substantial facts should be alleged. General and undefined charges of crime, especially those involving mental conditions and attitudes, should not be encouraged. They are not in harmony with the genius of a free people, living under a written constitution. We can see no good reason why an exception to the general rules of criminal pleading should be made in favor of this crime."

Inasmuch as section 37 of the Criminal Code denounces a conspiracy to commit any offense against the United States, and inasmuch as the indictment drawn under that section, and now under consideration, does not set forth which of many offenses denounced by the Volstead Act the accused had conspired to commit, the indictment must be deemed to be insufficient to require the said Beiner and Srolovitz to plead thereto.

It therefore follows that they should be discharged.