### UNITED STATES v. BOASBERG.

(District Court, E. D. Louisiana, New Orleans Division. June 7, 1922.)

Nos. 5408, 5512.

1. **Intoxicating liquors ⬅249—Evidence unlawfully obtained cannot be made basis of valid search warrant.**

Prohibition agents, under a search warrant for search of another building, searched defendant's residence, where they found liquor. On an affidavit of such fact and that it had been imported in violation of law, of which there was no evidence, a second warrant was obtained, under which the liquor was seized. *Held,* that search of defendant's house under the first warrant was unlawful, and that information so obtained could not lawfully be made the basis of a second warrant, or justify the seizure of defendant's property.

2. **Statutes ⬅170—Amendment of Prohibition Act held not to revive statutes thereby repealed.**

Rev. St. §§ 2865, 3082 (Comp. St. §§ 5548, 5785), relating to smuggling, repealed by National Prohibition Act, so far as concerns the importation of intoxicating liquors, *held* not revived by the amendatory Act November 23, 1921, § 5, and a search warrant to search for liquors alleged to have been imported in violation of law cannot lawfully issue on the showing required by Rev. St. § 3066 (Comp. St. § 5769).

3. **Intoxicating liquors ⬅216—Indictment must allege that liquors named are intoxicating.**

An indictment under National Prohibition Act for importing or possessing certain described liquors, but which does not allege that they are intoxicating, *held* not to state an offense.

4. **Indictment and information ⬅108—Charging that an act is in violation of a particular law adds nothing to indictment.**

Charging that an act described in an indictment is in violation of a particular law adds nothing to the indictment.

5. **Intoxicating liquors ⬅222—Indictment for possession of liquor held insufficient.**

An indictment under National Prohibition Act, tit. 2, § 33, for possessing liquor for beverage purposes, is insufficient, unless it negatives the

proviso by alleging that the liquor was not possessed by defendant in his private dwelling occupied by him for his personal use and consumption.

Criminal prosecution by the United States against Mark Boasberg, alias Jack Sheehan. On demurrers and motions to quash indictments, and rule to quash and set aside search warrant, and for the return of certain property to defendant. Demurrers and motions to quash sustained, and property ordered returned.

Louis P. Bryant, Asst. U. S. Atty., of New Orleans, La.

Warren Doyle and D. B. H. Chaffe, both of New Orleans, La., for defendant.

FOSTER, District Judge. This matter is submitted on demurrers and motions to quash two indictments against the defendant, and also on a rule to quash and set aside a search warrant and require the return of certain property to the defendant. The United States joined issue on the rule, and testimony and other evidence was submitted in open court. All questions were argued at the same time, are closely related, and may be disposed of in one opinion.

Arranging the proceedings in chronological order, it appears that on December 31, 1921, a search warrant issued out of this court to search certain premises alleged to be those of one Jack Sheehan. This warrant will be termed the first search warrant. On January 3, 1922, another search warrant was issued by a United States commissioner to search other premises of one Mark Boasberg, alias Jack Sheehan. This will be termed the second search warrant. On January 20, 1922, an indictment in three counts was returned against Mark Boasberg, alias Jack Sheehan, charging conspiracy to violate, and various violations of, section 3082, Rev. Stat. U. S. (Comp. St. § 5785), relative to smuggling, and the National Prohibition Act (41 Stat. 305). This will be termed the first indictment. On March 17, 1922, a second indictment in six counts, charging similar violations, except conspiracy, was returned against the same person. This will be termed the second indictment. He will hereafter be designated as the defendant. The indictments will be considered later.

Taking up the proceedings seriatim, the undisputed facts are these:

[1] The first search warrant issued on the affidavit of August J. Rouch, a prohibition officer, the material part of which is as follows:

"That on the night of December 29, 1921, there was unloaded from two boats in Mississippi river near the roadhouse of Jack Sheehan a large quantity of whisky and wine. This wine and liquor was transported to the residence and roadhouse known as the Suburban Gardens, and there are now stored in this residence, roadhouse, and outbuilding 500 cases of whisky and 500 cases of wine. These buildings are located near the junction of River road and road from Shrewsberry road and located in Jefferson Parish, La."

The premises to be searched were described in the warrant as:

"The roadhouse known as Suburban Gardens, residence of Jack Sheehan, and outbuilding on premises of same, in the parish of Jefferson and state of Louisiana."

The phrase "roadhouse" has a well-known meaning, indicating a certain kind of restaurant. As the premises to be searched were desig-

nated as a roadhouse with a specific name, "Suburban Gardens," the search warrant properly issued, although no sale of liquor was alleged; and though the premises were also designated as the residence of Jack Sheehan. It appears, however, that Suburban Gardens was not the actual residence of defendant. He lived in a cottage separate and distinct from the roadhouse, which was in fact closed and abandoned as a resort. Defendant's actual residence is about 50 yards from the roadhouse, in a different inclosure, not an outhouse nor part of the premises of Suburban Gardens, and has always been used as his private residence. It was not alleged or shown that any sale of liquor had ever been made at defendant's actual residence, or that it had been used in part for any business purpose.

In executing the search warrant Rouch took with him a number of other prohibition agents and by a display of force intimidated defendant and entered and searched his residence. A large quantity of liquor was found in the residence and seized, but not removed. Guards were placed in and around the residence, however, and the seizure maintained. The next day, on a summary hearing, at which the prohibition director and the collector of customs were present, the seizure was set aside and the guards ordered withdrawn from the residence. This was done to the extent of taking the guards out of the building, but a cordon was maintained on the outside.

The second search warrant was issued by Arthur Browne, Esq., United States commissioner, to search the residence of Mark Boasberg, alias Jack Sheehan. This warrant was executed, and the property was forcibly removed, and is now in the custody of the collector of customs. This second search warrant charged the concealment of certain whisky, wine, and cordials, subject to customs duties, fraudulently imported into the United States from a foreign country, in violation of section 3082, U. S. R. S., and issued on the affidavits of Dedaux, a customs inspector, and Day and Rouch, prohibition officers. The only knowledge these officers had of the alleged offense was derived from the facts that they personally saw the liquor stored in the residence of defendant, and some of the packages had labels indicating foreign manufacture and origin. This knowledge was obtained by invading the premises under color of the first search warrant and in no other way.

It is contended by defendant that his rights under the Fourth and Fifth Amendments to the Constitution of the United States have been violated by the searches and seizures by virtue of the first and second search warrants; that the first search warrant was of no effect to search defendant's residence; that the second search warrant was based on evidence illegally obtained through the unlawful execution of the first search warrant; that no search warrant could lawfully issue to search his residence, except upon evidence of the unlawful sale of intoxicating liquor therein; and that section 3082, U. S. R. S., and kindred sections, are impliedly repealed and superseded by the National Prohibition Act.

[2] The government relies mainly on section 3066, Rev. Stat. U. S. (Comp. St. § 5769), which authorizes search warrants in customs cases, and contends that, under the laws to prevent smuggling, evidence

of a sale in defendant's residence was not necessary to authorize the second search warrant. The government can derive no comfort from the anti-smuggling laws. So far as the importation of intoxicating liquor is concerned, these sections of the Revised Statutes, to wit, sections 2865 and 3082 (Comp. St. §§ 5548, 5785), are impliedly repealed by the National Prohibition Act, which is complete in itself and clearly sufficient to prevent the importation of intoxicating liquor. U. S. v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043; U. S. v. Dowling (D. C.) 278 Fed. 630; Fontenot v. Accardo (C. C. A.) 278 Fed. 871.

The government contends, however, that these sections are revived and made effective by the amendment to the National Prohibition Act of November 23, 1921 (42 Stat. 222). With regard to this, U. S. Rev. Stat. § 12 (Comp. St. § 13), provides:

"Whenever an act is repealed, which repealed a former act, such former act shall not thereby be revived, unless it shall be expressly so provided."

This epitomizes and makes certain the general rule of statutory construction. Considering the amendment of November 23, 1921 (section 5), the language is as follows:

"That all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act; but if any act is a violation of any of such laws and also of the National Prohibition Act or of this act, a conviction for such act or offense under one shall be a bar to prosecution therefor under the other."

Laws relating to the manufacture, taxation of, and traffic in intoxicating liquor are not laws relating to importation. As Congress omitted importation from the amendment, it follows sections 2865 and 3082, R. S., are not revived, regardless of what other construction may be given to the section. Section 3066, Rev. Stat., allows more latitude to executive officers in swearing out search warrants; but it is clearly in conflict with the provisions of the National Prohibition Act, which must take precedence. Furthermore, section 3066, Rev. Stat., in common with all other laws of Congress, must be controlled by, and administered with due regard to, the Constitution of the United States.

Search warrants under the National Prohibition Act are regulated by statutes that are to be strictly construed, not only because in derogation of fundamental principles of individual liberty, but also because of the constitutional inhibition. By sections 2 and 25 of title 2 of the National Prohibition Act search warrants may issue under the limitations provided in title 11 of the Act of June 15, 1917 (40 Stat. 228 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v]). This requires probable cause to be shown and the place to be searched and property to be seized to be described with reasonable certainty. Probable cause cannot be shown by evidence of mere suspicion nor by illegal evidence. Section 25 of the National Prohibition Act prohibits the issuance of a search warrant to search any private dwelling occupied as such, unless it is being used for the unlawful sale of intoxi-

cating liquor or for some business purpose. Section 6 of the amendment to the National Prohibition Act (approved November 23, 1921) makes it a misdemeanor punishable by fine and imprisonment for any officer of the United States engaged in the enforcement of the National Prohibition Act to search any private dwelling without a warrant directing such search. The Act of June 15, 1917, the provisions of which relating to search warrants are interpolated into the National Prohibition Act by section 19 of title 11 of said act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼s), specifically makes the provisions of sections 125 and 126 of the Criminal Code (Comp. St. §§ 10295, 10296), relative to perjury and subornation of perjury, applicable to all persons falsely swearing in support of applications for search warrants. Section 20 of the same title (section 10496¼t) makes it an offense punishable by a fine of $1,000 or imprisonment for one year to maliciously and without probable cause procure a search warrant to be issued or executed. Section 21 of the same title (section 10496¼u) inflicts the same penalties on an officer who in executing a search warrant willfully exceeds his authority or exercises it with unnecessary severity.

Applying the law to this case, it is evident the government agents were wholly without right or color of authority in invading Sheehan's home by virtue of the first search warrant. The place was not described in nor covered by the warrant. Had a warrant to search his actual residence been asked, it could not have issued on the evidence offered. The affidavit did not show a sale, did not show the residence was used as a place of business, and did not show the liquor had been imported. Saying the liquor had been landed from a vessel does not show it was brought from some other country. The law was clearly violated in executing the warrant.

The invasion of Sheehan's home was exactly the same as if the officers had no warrant at all. While unlawfully there, they obtained evidence which enabled them to apply for and secure the second search warrant, under which the seizure was made. At best this evidence was barely sufficient to support the search warrant, giving full effect to section 3066, Rev. Stat. As it was illegally obtained, no use could be made of it. There is no difference in principle between illegally obtaining evidence to convict a man of crime and illegally obtaining evidence to deprive him of his property, especially when the very property seized will itself be evidence against him on the trial of a criminal indictment.

The case comes squarely under the recent decisions of the Supreme Court in Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, Amos v. U. S., 255 U. S. 314, 41 Sup. Ct. 266, 65 L. Ed. 654, and Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319. In the Gouled Case it was suspected Gouled was conspiring with others to defraud the United States through contracts for clothing and equipment. One Cohen, a private in the army, attached to the Intelligence Department, pretended to make a friendly call on Gouled, and in his absence, without a search warrant, carried away several documents. Later other documents were seized under search

warrants. All of these papers were introduced in evidence against Gouled on the trial of a criminal indictment, and he was convicted. In answering questions certified by the Court of Appeals for the Second Circuit, the Supreme Court held that the evidence was inadmissible, as violative of the defendant's rights under the Fourth and Fifth Amendments of the Constitution of the United States. The court took occasion to say:

"It was objected on the trial, and is here insisted, that it was error to admit these papers in evidence because possession of them was obtained by violating the rights secured to the defendant by the Fourth and Fifth Amendments of the Constitution of the United States. The Fourth Amendment reads: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' The part of the Fifth Amendment here involved reads: 'No person  *  *  *  shall be compelled in any criminal case to be a witness against himself.' It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. U. S., 116 U. S. 616, in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property, that they are to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen, the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachments upon or gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous, executive officers. In the spirit of these decisions we must deal with the questions before us."

The Amos Case is more in point. The defendant was charged with having removed whisky on which the revenue tax had not been paid to a place other than a government warehouse and with having concealed whisky on which the tax had not been paid. Two deputy internal revenue collectors went to Amos' home and told his wife they were revenue officers and had come to search the premises for "violations of the revenue law." She admitted them, and they found a half pint of illicit whisky in a barrel of peas, and two quarts of illicit whisky under the quilt on a bed. They had no search warrant or warrant of arrest, and Amos was not present. A sample of the whisky was produced, and the officers testified to the above facts over objections and after a motion to return the whisky had been denied. The Supreme Court held that the search and seizure were illegal, and the evidence inadmissible, as the defendant's constitutional rights had been violated.

In the Silverthorne Case the Silverthornes were indicted and arrested. On the same day the office of their lumber company was invaded by United States officers and all their books and papers carted off to the office of the district attorney. On application to the court the documents were ordered returned, but in the meantime copies of the ma-

terial papers had been made. On these copies a new indictment was found, and on the trial it was attempted to compel the production of the original papers by the lumber company. As to this the Supreme Court said:

"The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had. The proposition could not be presented more nakedly. It is that 'although, of course, its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession, but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U. S. 383, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required, instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U. S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source, they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

It follows from the above that the seizure of defendant's property was illegal. As there is nothing before the court to show that the liquor was unlawfully manufactured or unlawfully possessed, it must be restored to him.

[3] The criminal charges require but slight discussion. The demurrers and motions to quash are mainly on the general ground that no offense is stated in any count. The indictments, omitting formal parts and allegations of knowledge and intent, substantially charge as follows:

First indictment: Count 1, that the defendant did conspire with divers persons to the grand jury unknown to violate the provisions of section 3082, U. S. Rev. Stat., by receiving and concealing merchandise. Then follows a long list of the merchandise, designated as whisky, champagne, vermuth, and other liquors. The count further charges that the said merchandise and liquors had been imported into the United States in violation of the Volstead Act. The count does not charge that the liquor had been imported for beverage purposes, nor that it was intoxicating. Count 2 charges that the defendant did "receive and conceal" the same merchandise, again without alleging the liquor to be intoxicating or for beverage purposes. Count 3 charges that the defendant did have in his possession a certain quantity of intoxicating liquor, naming a quantity of beer and wine, not the same as covered by the other two counts. It is not charged it was possessed for beverage purposes.

Second indictment: Count 1, that the defendant did import for beverage purposes from a foreign country certain merchandise, knowing that the importation was contrary to and in violation of the Volstead Act and section 3082, U. S. Rev. Stat. The merchandise set out is

the same as in counts 1 and 2 of the first indictment. Counts 2, 3, and 4 charge respectively that the defendant did receive, conceal, and buy the same liquors. These four counts do not charge that the liquor was intoxicating. Count 5 charges that the defendant "did have in his possession the following alcoholic intoxicating liquors for beverage purposes, which said possession was then and there prohibited and unlawful and in violation of the Volstead Act." This count describes the same list of liquors as the first four counts. Count 6 is in identical language, but covers the liquor described in count 3 of the first indictment.

[4] It is elemental that, in charging a statutory offense, it is usually sufficient to follow the language of the statute, but every element of the offense must be pleaded. Further, charging that the act described is in violation of a particular law adds nothing to the indictment. Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505. The National Prohibition Act makes it an offense to import or possess intoxicating liquor for beverage purposes. In order to constitute a crime, the importation and possession must come clearly within the provisions of the law, and the indictment must so charge. Including a list of liquors in the indictment without alleging them to be intoxicating is not sufficient. Measured by this standard, the first indictment and the first four counts of the second indictment are clearly defective. U. S. v. Dowling (D. C.) 278 Fed. 630.

[5] This leaves counts 4 and 5 of the second indictment to be considered. While the National Prohibition Act makes possession of intoxicating liquor for beverage purposes generally unlawful, section 33 of title 2 of the act contains the proviso that it shall not be unlawful to possess liquors in one's private dwelling for the use of himself, his family, and bona fide guests.

The said two counts do not negative this proviso in any way. It is not enough to say this is a matter of defense to be raised by the defendant. Unless the exception is negatived, or the allegations of the indictment clearly show the liquor to be possessed at a place not the defendant's residence, no offense is charged. U. S. v. Cook, 17 Wall. 168, 21 L. Ed. 538. The facts in this case, disclosed on the trial of the motion to set aside the search warrant, show how vital to the rights of the defendant the omission becomes.

It is possible that both indictments, or at least the fifth and sixth counts of the second indictment, would be sufficient to sustain a conviction after verdict on evidence received without objection, but here the question is presented in limine by proper pleadings. The demurrers and motions to quash will be sustained, and the indictments dismissed.

There will be judgment in favor of defendant, quashing and setting aside the second search warrant, annulling the seizure of his property and ordering its return to him. There will be also a judgment dismissing both indictments.