## FISHER et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 29, 1924.)

No. 2261.

**1. Criminal law ⊂⊃394—Evidence obtained by illegal search by state officers not incompetent in federal court.**

Evidence is not inadmissible in a federal court because obtained through an illegal search by state officers.

**2. Searches and seizures ⊂⊃7—Search of automobile without warrant held legal.**

Where packages being carried from an automobile by a person when arrested contained whisky, a search of the automobile without a warrant was not unreasonable.

**3. Criminal law ⊂⊃1129(3)—General assignment of error held insufficient.**

A general assignment of error to the overruling of a demurrer to the indictment is without effect, where it does not point out any defects, and it does not appear that the grounds of the demurrer were made known to the District Court.

**4. Indictment and information ☞87(7)—Allegation of time of overt acts fixes time of conspiracy charged.**

A charge of conspiracy in an indictment is made definite as to time by allegations of the time of overt acts.

**5. Criminal law ☞1167(1)—That indictment charged conspiracy to commit different offenses held not prejudicial.**

That the indictment charged a conspiracy to commit different offenses is not sufficient ground for reversal, where it appears that defendants understood the charge against them and were not prejudiced.

**6. Indictment and information* ☞121(5)—Indefiniteness cured by bill of particulars.**

Indefiniteness in an indictment in stating the offense is cured by a bill of particulars describing it in detail.

**7. Criminal law ☞1134(3)—Wisdom of charging conspiracy to commit an offense, as well as commission of such offense, not matter for appellate court.**

The wisdom of adding a charge of conspiracy to commit an offense to a charge of committing the overt act is not a matter for consideration of the appellate court, where the conspiracy is made out by the evidence.

**8. Criminal law ☞1056(1), 1129(1)—Instruction not excepted to, nor assigned as error, not ground for reversal.**

A judgment of conviction, required by the evidence, should not be reversed because of an erroneous instruction not excepted to nor assigned as error.

Waddill, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Criminal prosecution by the United States against Lyda Fisher and Edward L. Cabell, alias Jonah Cabell. Judgment of conviction, and defendants bring error. Affirmed.

J. Raymond Gordon, of Charleston, W. Va., for plaintiffs in error.

Ellis A. Yost, Asst. U. S. Atty., of Huntington, W. Va. (Elliott Northcott, U. S. Atty., of Huntington, W. Va., and B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va., on the brief), for the United States.

Before WOODS, WADDILL and ROSE, Circuit Judges.

WOODS, Circuit Judge. The defendants, Lyda Fisher and Edward L. Cabell, alias Jonah Cabell, were convicted on an indictment charging conspiracy to violate the National Prohibition Laws (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), "in that they would unlawfully, willfully, and knowingly sell, barter, transport, deliver, furnish and possess distilled spirits and intoxicating liquors, otherwise than as authorized in the aforesaid act of Congress, known as the 'National Prohibition Act,' and in violation of the provisions of the said National Prohibition Act."

The testimony for the government was as follows: On the afternoon of March 25, 1924, Lyda Fisher, one of the defendants, drove in an automobile to Morgan Court Apartments on Lower Washington street in the city of Charleston, W. Va. She stopped the car, called to Ethel Ferrell on the porch, and asked if Robert Johnson wanted any whisky. Johnson was at that time living with Ethel Ferrell. Ethel replied that Johnson was in the house in bed and told Lyda Fisher to see him. Thereupon Lyda Fisher entered the house with Ethel Ferrell, and Johnson ordered two gallons of whisky, to be delivered at 8 o'clock that evening. At the time agreed, Lyda Fisher and Edward L. Cabell drove to Morgan Court Apartments, and Cabell got out of the car with two shopping bags in his hands. He was on his way towards the house when a deputy sheriff arrested him and took two gallons of corn whisky from the bags. Lyda Fisher attempted to escape, but was arrested by another deputy sheriff who had jumped into the car. When the car was searched at police headquarters, four more gallons of moonshine whisky were found concealed behind the seat. The officers had no search warrant for the car.

Cabell did not testify, but Lyda Fisher's version was this: On the afternoon of March 25th she was driving down Lower Washington street with Marie Perkins, when Ethel Ferrell hailed her from the front porch of the Morgan Court Apartments. She stopped, and Ethel inquired if she had any whisky. She told her she did not. She did not get out of the automobile, or go into the house. She did not see Robert Johnson, or make any arrangement with him to deliver whisky. Later that afternoon, Jonah Cabell, her divorced husband, came to her at her sister's home and asked to be taken to the city. She and Cabell were driving around town, when at Cabell's request she stopped in front of Morgan Court Apartments, where the officers arrested her and seized her car. She did not see Cabell with any whisky, and did not know that there was any in her car. She admitted a prior conviction for violation of the prohibition laws.

[1, 2] The evidence of the search of the automobile was competent, because made by state officers, and because the search of an automobile even by a federal officer under the circumstances proved would not have been unreasonable. Riggs v. United States

(4th Circuit) 299 F. 273; Ash v. United States (4th Circuit) 299 F. 277, both decided May 20, 1924; Kanellos v. United States (C. C. A. 4th Circuit) 282 F. 461; Milam v. United States (C. C. A. 4th Circuit) 296 F. 629.

[3, 4] The record does not disclose that any grounds for the demurrer to the indictment were made known to the District Judge, nor do the assignments of error point out any defects to this court. The general assignment of error in overruling the demurrer is therefore without foundation. Connors v. United States, 158 U. S. 408, 411, 15 S. Ct. 951, 39 L. Ed. 1033; Withrow v. United States (4th Circuit) 1 F.(2d) 858; Hedderly v. United States, 193 F. 561, 565, 114 C. C. A. 227, 31 C. J. 817; 14 R. C. L. 201. Waiving that, however, in argument counsel insisted that the indictment was defective for lack of allegation of time. The time of the conspiracy was made definite by reference in the charge of conspiracy to the time set out in the charge of the overt act. Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 S. Ct. 291, 59 L. Ed. 705; Anderson v. United States, 260 F. 557, 560, 171 C. C. A. 341.

It is not necessary that the indictment should specifically negative all of the conditions under which the defendants could lawfully possess, transport, and sell liquors. National Prohibition Act, § 32.

[5] Objection was also made in argument that the indictment was fatally defective in that it charged a conspiracy to sell, barter, transport, deliver, furnish, and possess intoxicating liquors without specifying which one of these particular acts the defendants conspired to commit. The record of the trial shows that the defendants fully understood the time, place, and circumstances of the offense alleged against them, and were in no way prejudiced by any defect in the indictment.

In Connors v. United States, 158 U. S. 408, 411, 15 S. Ct. 951, 952 (39 L. Ed. 1033) as to three distinct offenses in one count, the court says:

"If the objection now urged could have been taken by motion to quash the indictment, it is sufficient to say that although the record shows that there was such a motion, the grounds of it are not stated. So far as the record discloses, the specific objection now urged was made for the first time after verdict by a motion in arrest of judgment. But such an objection, not made until after verdict, would not justify an arrest of judgment, and is not available on writ of error.

1 Bish. Crim Pro. §§ 442, 443; Wharton's Crim. Pl. & Pr. § 255. Nor, if made by demurrer or by motion and overruled, would it avail *on error unless it appeared that the substantial rights of the accused were prejudiced by the refusal of the court to require a more restricted or specific statement of the particular mode in which the offense charged was committed.* Rev. Stat. § 1025 [Comp. Stat. Sec. 1691]. There is no ground whatever to suppose that the accused was taken by surprise in the progress of the trial, or that he was in doubt as to what was the precise offence with which he was charged."

In Armour Packing Co. v. United States, 209 U. S. 56, 84, 28 S. Ct. 428, 436 (52 L. Ed. 681) the court again said:

"In the present case no objection was made to the indictment until after verdict by motion in arrest of judgment. Had it been made by demurrer or motion and overruled it would not avail the defendant, *in error proceedings,* unless it appeared that the substantial rights of the accused were prejudiced by the refusal to require a more specific statement of the particular mode in which the offense charged was committed. * * * Rev. Stat. U. S. § 1025; Connors v. United States, 158 U. S. 408, 411." Martin & Allwood v. United States (4th Circuit) 299 F. 287, decided May 19, 1924.

The language italicized means that even if the trial court erred in overruling a demurrer to the form of the indictment the appellate court should not reverse when it appears that the substantial rights of the accused were not prejudiced on the trial.

[6] There is no doubt that the indictment in the case before us charges an offense against the United States. The defendants contended that the offense was not charged with sufficient definiteness. The objection, even if well taken, is met by the fact that upon order of the District Judge a bill of particulars was furnished which fully set out the details of the charge. Rosen v. United States, 161 U. S. 29, 35, 16 S. Ct. 434, 40 L. Ed. 606; Durland v. United States, 161 U. S. 306, 315, 16 S. Ct. 508, 40 L. Ed. 709.

[7] The motion to direct an acquittal of the defendant Cabell was properly refused. An agreement of two or more persons to commit any crime against the United States, with an overt act done in effecting its object, is indictable as a conspiracy. Williamson v. United States, 207 U. S. 425, 446, 28 S. Ct. 163, 52 L. Ed. 278. In what cases it is wise that the charge of conspiracy

should be added to the charge of committing the criminal overt act is a matter not within the discretion of the appellate court.

There was evidence that Cabell's coconspirator, Lyda Fisher, made a criminal agreement with one Johnson that she would deliver to him two gallons of whisky at 8 o'clock the same evening. The evidence proved that at the hour agreed Cabell and Lyda Fisher arrived at Johnson's place of residence with six gallons of whisky in an automobile, and that Cabell got out of the car and was going towards Johnson's house with two gallons of whisky when he was arrested. This testimony, uncontradicted except by the unreasonable evidence of Lyda Fisher, was well-nigh conclusive that Cabell had agreed to join the conspiracy of Lyda Fisher and Johnson to transport, sell, and deliver two gallons of whisky to Johnson.

But leaving out of view any agreement between Lyda Fisher and Johnson, we do not see how it can be doubted from the evidence that Lyda Fisher and Cabell had agreed to transport and to sell and deliver the whisky to Johnson, and that they were in the overt act of carrying out the conspiracy when arrested.

It hardly need be said that a conspiracy is often proved by the overt act. The fact that two men are found together breaking into a bank is indubitable proof that they had agreed to commit the burglary.

The instructions of the court were in accordance with the views herein stated.

[8] There was no exception to the instruction of the District Judge referring to the failure of the defendant Cabell to testify; no error is assigned on that point; and no reference is made to it in the printed argument. We do not think the court should lay hold of the instruction, even if erroneous, when the trial court's attention was not called to it by exception or otherwise, to set aside a conviction clearly required by the evidence.

Affirmed.

WADDILL, Circuit Judge (dissenting). I dissent from the majority opinion for the following reasons:

First. From my view, the indictment against the accused is wholly insufficient to sustain the prosecution for conspiracy, in this: That, conceding but not admitting the right to rely upon the averments of the overt act set forth, it is manifest that no criminal offense, and certainly not that of conspiracy, is covered by the indictment. After making averments forming the basis of the conspiracy charge, the indictment alleges that the purpose was to commit an offense against the United States, to wit, to unlawfully, willfully, and knowingly violate an act of Congress known as the Volstead Act, setting forth the act with some particularity, and then describes the alleged violation as follows: "In that they would unlawfully, willfully and knowingly sell, barter, transport, deliver, furnish and possess distilled spirits and intoxicating liquors other than as authorized in the aforesaid act of Congress." In other words, as stated, this charge of conspiracy to violate the National Prohibition Law by the possession, sale, delivery, barter, and transportation of intoxicating liquors other than as authorized by the act, is a mere negative averment without conveying information showing what the particular offense consists of. It might have referred to any number of things in the nature of violations of the National Prohibition Act; but to consolidate all the provisions of the act with a general statement that the infraction was because what was done was in a manner other than authorized by the act of Congress is merely to make a general statement, and no specific charge of the commission of any particular offense thereunder. To charge that the offense sought to be described is in violation of a particular law adds nothing to the indictment. United States v. Hess, 124 U. S. 483, 486, 8 S. Ct. 571, 31 L. Ed. 516; Keck v. United States, 172 U. S. 434, 437, 19 S. Ct. 254, 43 L. Ed. 505; United States v. Beiner (D. C.) 275 F. 704; United States v. Dowling (D. C.) 278 F. 642; Hilt v. United States, 279 F. 421 (C. C. A. 5th Cir.); United States v. Boasberg (D. C.) 283 F. 305, 311, 312; Blackmore on Prohibition, p. 432, § 2; Forman v. Commonwealth, 195 Ky. 758, 243 S. W. 1043.

Second. Assuming that the defective averment of conspiracy in the indictment can be cured or added to by reference to subsequent specifications of overt acts therein, particularly where no reference in the conspiracy charge to such overt acts is made, which is contrary to an almost unbroken line of decisions on the subject, especially those from the Supreme Court of the United States (United States v. Britton, 108 U. S. 199, 204, 205, 2 S. Ct. 531, 27 L. Ed. 698; Pettibone v. United States, 148 U. S. 197, 202, 13 S. Ct. 542, 37 L. Ed. 419; Dealy v. United States, 152 U. S. 539, 547, 14 S. Ct. 680, 38 L. Ed. 545; Bannon & Mulcahy v. United States, 156 U. S. 464, 468, 469, 15 S. Ct. 467, 39 L. Ed. 494;

Hyde v. Shine, 199 U. S. 62, 76, 25 S. Ct. 760, 50 L. Ed. 90; Hyde v. United States, 225 U. S. 347, 357, 358, 359, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Joplin Mercantile Co. v. United States, 236 U. S. 531, 535, 536, 35 S. Ct. 291, 59 L. Ed. 705; Anderson v. United States, 260 F. 558, 559, 171 C. C. A. 341; United States v. Beiner (D. C.) 275 F. 704, 706, 708), it will be seen from the particularization of the overt acts that the same consist of those alone of two of the conspirators named in the conspiracy charge of the indictment, viz., that Lyda Fisher and Edward L. Cabell possessed and transported in a certain automobile two gallons of intoxicating liquors upon and over the streets of Charleston, W. Va., and in pursuance of the alleged conspiracy attempted to deliver the same to their coconspirator Robert Johnson. Thus the grave and serious charge of conspiracy sought to be covered by the indictment, and for which the defendants Fisher and Cabell were convicted and sentenced to the penitentiary for two years each and to pay each a fine of $1,000, consisted only of their attempt to sell two gallons of intoxicating liquors, which sale was not consummated.

The offense which the defendants committed as specified in the overt acts was a misdemeanor, for which, upon conviction, had such sale been consummated, a maximum fine of $500 (National Prohibition Act, 41 Stat. L. p. 305) might have been imposed; whereas, by the use of the overt acts to sustain the conspiracy count, otherwise clearly invalid, the serious consequence to the defendants is manifest, in that an alleged misdemeanor is raised to a felony punishable by a maximum fine of $10,000 and imprisonment in a penitentiary for two years each, and they were, as a matter of fact, fined $1,000 each and sentenced to serve a term in the penitentiary of two years each.

The decisions of the Supreme Court cited cover every feature of the conspiracy law as applicable to this case, and it may be noted that between the decision in United States v. Britton, supra, 108 U. S. 199, 2 S. Ct. 531, and Joplin Mercantile Co. v. United States, supra, 236 U. S. 531, 35 S. Ct. 291, there has been some modification of the views of the court as to the necessity to charge and prove the commission of the overt act. Still, the gist of the offense is the unlawful combination, which must be proven against all of the members of the conspiracy, each one of whom is then held responsible for the acts of all. Bannon v.

United States, 156 U. S. 464, 468, 15 S. Ct. 467, supra. A careful review of the decisions of the Supreme Court in the case of Hyde v. United States, supra, 225 U. S. 357, 358, 359, 32 S. Ct. 793, and Joplin Mercantile Co. v. United States, supra, 236 U. S. 535, 536, 35 S. Ct. 291, will make entirely clear the law on this subject; and it will be found that the last-cited case furnishes the suggestion that where the overt act is referred to in a conspiracy charge, then perhaps the same may be looked to to throw light upon the conspiracy. But this was not done in this case.

Third. Sight is not lost of the fact that the modern tendency is to simplify criminal pleadings, and not to have the administration of the criminal law incumbered by unnecessary technicalities, especially in cases of minor offenses. But where the effort, or the effect of it is to turn a petty and minor offense into a grave and serious felony by an alleged conspiracy, then too much care and particularity cannot be required in setting forth the offense in order to apprise offenders in such instances of the purpose to punish them under a statute other than the one particularly covering the offense alleged to have been committed, and for which appropriate punishment is prescribed.

Fourth. I am by no means unmindful of the fact that under the conspiracy statute an offense may be charged in connection with the violation of the criminal laws of the United States; but it was never intended that the conspiracy statute, which is most important to the government in order to reach large and extensive transactions involving crimes, offenses, and combinations of every character on the part of many persons distant from each other, and covering large territory, having frequently for their object and purpose the defeat and overthrow of law and order, should be applied to and used for the purpose of reaching petty transactions condemned by the law and for which appropriate punishment is prescribed.

There is no pretense that there was any actual conspiracy within the meaning and spirit of that law in what was done in this case. At most, what occurred was that A., who was not inhibited by law from so doing, agreed to purchase from B. two gallons of liquor, and the latter and one C. were arrested, and C. was found with the liquor in his possession, engaged, as was claimed, in the effort to deliver the same.

The history of the legislation known as the Volstead Act shows that Congress had the greatest difficulty in appropriately pro-

viding punishment for violations of the act such as is sought to be reached here, viz., for separate violations of the act by the unlawful manufacture, possession, transportation, barter, and sale of intoxicating liquors, and maintaining a nuisance in connection therewith, none of which would have been necessary had it been the intention of Congress for a moment to reach such matters under a conspiracy charge, and it would be a violent assumption to suppose that when this legislation was under consideration the Congress was not fully advised of the existence of the conspiracy statute.

Fifth. Viewing this case in the light of the testimony, it is very simple, accepting the government's account of the transaction, viz., that Lyda Fisher agreed to procure for Robert Johnson two gallons of whisky, and that she and Edward L. Cabell on the evening of the day in question, in the alleged attempt to deliver the same to Johnson, were intercepted and Cabell found with the whisky in his possession, which was taken from him. Johnson was not brought to trial, and Lyda Fisher and Cabell were jointly tried. There was no proof of Cabell's participation in the alleged promise to procure the liquor, or that he had any knowledge thereof, further than may have been inferred from the alleged attempt at delivery of the spirits in question. The evidence was wholly insufficient to convict him of any offense save possession of the whisky. There was no proof connecting Cabell with the alleged original conspiracy to sell, and hence in the bill of particulars filed at the trial another conspiracy was sought to be set up, viz., as to what occurred between Fisher and Cabell at the time of the attempted delivery. This, of course, was not covered by the indictment, and could not be availed of.

While there is no evidence sufficient to convict Cabell of any offense save having the two gallons of liquor in his possession, certainly neither he nor Lyda Fisher could be convicted of the crime of conspiracy by reason of what they or either of them did in reference to the mere attempt to sell two gallons of whisky, thereby raising the offense from a petty misdemeanor to a grave and serious felony; the punishment for the misdemeanor being a fine of not over $500, whereas for the felony, of which each defendant has been convicted, it could be confinement in the penitentiary for two years each, and a fine of $10,000 each. To suppose that such a thing would be attempted, or could be done, is unthinkable, and would not be believed but for conditions as they exist. Of course, whether this can be done is of vital importance to these defendants. The effect of doing the same becomes of even greater consequence to the public in that the infliction of such harsh punishment, instead of that prescribed in the Volstead Act, must in the end result in defeating, or at least giving a serious blow to the prohibition legislation, as the same necessarily shocks the conscience of too many thoughtful, law-abiding, and intelligent people, who are otherwise favorable to the law, and the humane enforcement thereof, by the imposition of the punishment therein prescribed.

Sixth. The decision of the District Court should also be reversed and a new trial awarded because of the charge of the judge in reference to the failure of the accused, Cabell, to testify. After making several references to the uncontradicted testimony, so far as he was concerned, the judge concluded:

"Now, that evidence as to the liquor with Cabell, and which Cabell had in his hands, and as to the liquor found in the car, stands absolutely fixed as a fact in this case, so far as any denial thereof is concerned. Of course, you understand that Mr. Cabell did not take the stand, and that was his right. No man is compelled to testify against himself, in anything of that kind, and if he wants to let that evidence stand uncontradicted, that is his right and privilege under the Constitution to do that; and he did do that, and we have the positive evidence of the two officers, with no contradiction thereof."

That an accused cannot be compelled to testify against himself is elementary, and the statute permitting him to testify in his own behalf (March 16, 1878, 20 Stat. L. 30, Comp. Stat. 1916, vol. 3, § 1465) carefully safeguarded his rights by providing that "his failure to make such request (i. e., to testify) shall not create any presumption against him." Under this statute, the failure of the accused to testify cannot be made the subject of comment by counsel or the court. Wilson v. United States, 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650, note to section 1465, Ann. Stat. supra, and the authorities therein cited. Of course, it was not necessary to provide in the statute that such failure to testify should not be indirectly referred to. The able opinion of Mr. Justice Field in Wilson v. United States, supra, 149 U. S. 60, 13 S. Ct. 765, will show the light in which the qualification to the statute in question should be read; and especially how far reaching its intent and

purpose is from the humane viewpoint in behalf of an accused. The remarks of the judge in this case, while indirect in a sense, could not have been made in language that would more clearly have suggested the existence of presumption against the accused by reason of his failure to testify. What was said would not have been permitted by counsel, and coming from a judge in the shape of a charge to the jury, stating the same as the law of the case, was doubly objectionable. Indeed, the action of the court was clearly erroneous, and highly prejudicial to the accused, for which a new trial should be awarded.

The reference to Cabell's failure to testify was also objectionable from another viewpoint. The charge against him was conspiracy, in which one defendant alone could not have been convicted in the circumstances here; and there was not the slightest direct testimony against Cabell connecting him with the alleged conspiracy further than such as might be inferred from his possession of the liquor in question. Hence, this comment on his failure to testify was the more prejudicial, as no conviction could have been had of either Cabell or Fisher, unless Cabell could be found guilty as a coconspirator.

Suggestion is made that the charge in the respects mentioned was not excepted to. Suffice to say that a careful perusal of the record will show that the accused were vigorously pressing their defense, and if in the haste and excitement of the trial an omission such as is claimed was made, it should not be availed of to bring about the miscarriage of justice that would necessarily follow. The purpose of all trials should be to see that justice is meted out. Especially is this true in a criminal case where the accused is presumed to be innocent, and to whom a fair and impartial trial is guaranteed and should be afforded. Wiborg v. United States, 163 U. S. 632, 658, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 221, 25 S. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 194, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; 1 Zoline on Criminal Law and Procedure, § 446; Allen v. United States, 115 F. 12, 52 C. C. A. 597; Stokes v. United States (C. C. A.) 264 F. 18; State v. Staley, 45 W. Va. 804, 32 S. E. 198; Sec. 2, rule 14 of this court. Where, as here, something is done that is necessarily prejudicial and in derogation of the plain rights of a defendant, the government should not be permitted to interpose

2 F.(2d)—54

narrow technicalities to encompass a conviction. This is likewise true of the failure to demur to a manifestly invalid indictment. In this case, the indictment is so fatally defective, in that it charges the commission of no crime, that defense thereto could be interposed by motion in arrest of judgment.