## ROBINSON *v.* STATE.*

(Division B. Nov. 10, 1924.)

[101 So. 706. No. 24419.]

1. CRIMINAL LAW. *Evidence obtained under search warrant based on evidence disclosed by unlawful search inadmissible.*

   Evidence obtained under a search warrant based on evidence illegally disclosed under an unlawful search is inadmissible.

2. INTOXICATING LIQUORS. *Search of premises under warrant obtained after partial search without warrant or permission unlawful.*

   Where state or county officers, without a search warrant, and without permission of the owner, search a residence and find whisky, whereupon some of the officers remain in charge of the premises while another goes and obtains a search warrant and returns to the premises, and a further search of them is made by the officers, the whole transaction is unlawful. There was never an abandonment by the officers of the original unlawful search.

*Headnotes 1. Criminal Law, 16 C. J., section 1110; 2. Intoxicating Liquors, 33 C. J., section 383 (1926 Anno).

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

B. W. Robinson was convicted of the unlawful possession of a still, and he appeals. Reversed and rendered.

*Kimbrough, Tyson & Kimbrough,* for appellant.

All of the evidence of the sheriff and his deputies, that obtained by a trespass upon the premises of appellant,

without lawful authority, as well as that obtained under the search warrant which was procured on information unlawfully obtained by him, should have been suppressed. Under the rules announced in *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. R. L. 1377; *Owens* v. *State,* 98 So. 235, and many other cases decided by this court, no testimony could be given with reference to the unlawful search made by the sheriff on the premises and in the dwelling house of appellant, without the aid of a search warrant. Not only do we contend that the evidence procured without the search warrant, and all testimony in reference to it, was incompetent and inadmissible, but we insist that the search warrant was itself void, it being based entirely on information illegally procured by the sheriff, while engaged in the commission of a trespass against appellant. The sheriff knew he was without authority and undertook to cure this defect. He placed two deputies on guard and instructed them, according to his own testimony, and that of Mr. White, the only deputy who testified, to allow no one to enter or depart during his absence. This is not contradicted by anyone but is admitted by the sheriff and his deputy themselves. It is not even a case in which the sheriff is entitled to any charity, due to ignorance on his part. He recognized the importance and necessity of obtaining a search warrant, because he had only a short while before procured one for the purpose of searching the home of Caruthers.

Blakemore on Prohibition, p. 295, says: "The Constitution protects the guilty along with the innocent, for reasons deemed sufficient, into which one need not inquire. It means to prevent violent entries till evidence is obtained independently of the entries themselves, or of the admissions involved in seeking redress for the wrong done. Were it not so, all seizures would be legal which turned out successful." *U. S.* v. *Casino,* 286 Fed. 976.

Blakemore on Prohibition, on p. 310, says: "An un-

lawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It was against such prying on the chance of discovery, that the constitutional amendment was intended to protect the people." *U. S.* v. *Slusser,* 270 Fed. 818.

Blakemore on Prohibition, at p. 361, says: "Evidence obtained under a second search warrant, based on evidence illegally disclosed under a first invalid warrant, should be excluded," and cites *U. S.* v. *Boasberg,* 283 Fed. 305.

In the *Boasberg case, supra,* an invalid search warrant was obtained and in the execution of it, liquor was found. Realizing that there was a doubt as to the sufficiency of the first warrant, the officer in charge placed a cordon of officers on guard on the outside of the building, and in the light of the evidence obtained under the illegal warrant, applied for and procured a second search warrant. In condemning this proceeding, the court says: "This knowledge was obtained by invading the premises under cover of the first search warrant and in no other way." (P. 307) And further, on p. 309 says: "The invasion of Sheean's home was exactly as if the officers had no warrant at all. While unlawfully there, they obtained evidence which enabled them to apply for and secure a second search warrant, under which the seizure was made." *Jordan* v. *State,* 100 So. 384, decided in June of this year, by this court, is absolutely conclusive of the question. We quote one sentence from the opinion of the court in *Jordan* v. *State, supra,* as follows: "The search of appellant's home was begun in an unlawful manner, without a search warrant, and completed under a search warrant based upon the information so unlawfully obtained. . . ."

*F. S. Harmon,* for state.

THE WARRANT WAS PROPERLY ISSUED, THE AFFIDAVIT BEING
LEGAL AND IN FULL COMPLIANCE WITH THE CONSTITUTION
AND THE STATUTE, PROBABLE CAUSE BEING SHOWN.    Counsel
insist with 'vigor that the search of the outhouse made
pursuant to the warrant, which resulted in the finding of
the still for the possession of which appellant was con-
victed, was unlawful.    It is insisted that the affidavit on
which this search warrant was based, was made as a re-
sult of and based on information secured during the
illegal search.    We submit with deference to learned
counsel and to this court that such is not a necessary con-
clusion from the record in this case, and if any other con-
clusion appears at all reasonable, such conclusion must
be taken as correct under the rule that the justice of the
peace issuing the warrant, being a public officer and act-
ing judicially, is presumed to have acted correctly in the
premises.

Let us emphasize the proposition that it is the justice
of peace who decides primarily the sufficiency of the facts
in enabling him to say judicially that probable cause
exists.    And the same weight should be given to the trial
of fact in this instance as is given to the verdict of a jury
on the facts, or to the finding of a chancellor.    In *U. S.
v. Boling,* 24 Fed. 1189, at 1192, the court said: "The
meaning of the expression 'probable cause' as used in
the federal Constitution, declaring that no warrant shall
issue but upon probable cause, is that there is a proba-
bility that a crime has been committed by the person
named in the warrant.    Of this probability the court or
magistrate issuing the warrant must be satisfied by facts
supported by oath or affirmation."

In *U. S.* v. *Tureaud,* 20 Fed. 623, Mr. Justice BRADLEY
said: "It is plain from this fundamental enunciation,
as well as from the books of authority in criminal matters
in the common law, that the probable cause referred to,

and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground for believing the accused guilty.''

In *DeGraff* v. *State,* 103 Pac. 538, the court said: ''This necessarily makes the issuance of a warrant a judicial act, to be exercised by the officer who is clothed by law with the power and authority to determine as to whether or not the warrant should be issued.''

EVIDENCE SECURED BY A LAWFUL SEARCH OF THIS POTATO HOUSE IS NOT RENDERED INADMISSIBLE BY VIRTUE OF AN UNLAWFUL SEARCH OF APPELLANT'S RESIDENCE. The appellant here was convicted of having a still in his possession. The still and all the integral parts thereof, together with three quarts of the finished product were found in a potato house in an extreme corner of the yard next to the garden. The entire outfit was found during the course of the lawful search, there being no entry and no search of the potato house during the course of the unlawful search of the residence. It is a poor rule which does not work both ways. It has been held that where a search warrant designates a room as the place to be searched, that the officers cannot go beyond the words of the warrant and search other parts of the house or the back yard or outhouses, and testify as to what they found in these other places. *Fatimo* v. *State,* 98 So. 537.

*Kimbrough, Tyson & Kimbrough,* in reply, for appellant.

The special assistant attorney-general, in the second paragraph of his statement of facts, says: ''It is necessary for the court to get a clear grasp of the pertinent facts of this case in order to understand the argument of the questions of law raised in the brief of counsel for appellant,'' and then proceeds to state the facts as he

takes them from the record. *State* v. *Siedenbaum,* 177 Pac. 669, says: "It is true that it is always open season for the bootleggers, and they may be shot from blinds, decoyed by stoolpigeons, hunted with hounds, and taken in traps; yet the bag is subject to a fair and impartial examination before a jury, even though thereby it result that an occasional bird may escape."

Argued orally by *O. L. Kimbrough,* for appellant, and *F. S. Harmon,* Assistant Attorney-General, for appellee.

SYKES, P. J., delivered the opinion of the court.

The appellant was indicted, tried, and convicted of unlawfully having in his possession a still, and sentenced to serve a term of two years in the state penitentiary. The only question necessary to be considered on this appeal is whether or not the testimony of the sheriff and other officers, which testimony was seasonably objected to, was admissible.

The testimony of the sheriff was heard by the court in the absence of a jury, and is in substance as follows: He states that he had information that the appellant was manufacturing whisky, and that it was being sold by his son-in-law Caruthers, and that on the particular night in question some of this whisky was at the home of Caruthers. Whereupon he made affidavit, and procured a search warrant to search Caruthers' home. He and two deputies in this search failed to find any whisky, but found this appellant (Robinson) at the home of Caruthers, lying on a bed drunk. From Caruthers' home the sheriff and his deputies went to the home of this appellant; when asked why he went there he stated, "Went to see what I could find." He had no search warrant to search the home or premises of appellant. The testimony of the sheriff then shows that, after entering the premises of appellant, he could smell whisky or mash.

There was no one at appellant's home, and the officers went in the house and saw some whisky in there. Whereupon the sheriff left the two officers on the premises on guard, and he immediately proceeded to the home of the county attorney, and from there he and the county attorney went to a justice of the peace, and the sheriff made an affidavit for a search warrant to search the home of the appellant. This occurred about twelve or one o'clock in the morning. To the justice of the peace the sheriff related the facts and circumstances of the matter as we have above detailed them.

Upon the return to the home of the appellant the officers then made a thorough search of the premises, residence, and outhouses. Previous to this time they had searched nothing except a part of the house. The still was found in an outhouse.

The court held that these officers could testify about the search made after the procurement of the search warrant, but could not testify about anything they found in the first search. The appellant contended that all of the testimony was inadmissible. At the conclusion of the testimony a peremptory instruction was asked by the appellant.

It is the contention of the state that the second search was lawful because the sheriff before the first unlawful search had information upon which he was warranted in making an affidavit, and the justice of the peace was warranted in issuing same. It further contends that, since the outhouse was not unlawfully searched in the first instance, it was lawful to search it under this search warrant.

We neglected to state that in the affidavit of the sheriff he stated that he had information that this appellant had in his possession intoxicating liquors. We cannot agree with the contention of the state in this case. The sheriff in his testimony states that his original information was

that the appellant was making whisky and Caruthers was selling it for him; that on this particular occasion the whisky was in the possession of Caruthers, and he made affidavit and obtained a search warrant to search the home of Caruthers. Therefore at that time with the information before him he concluded that whatever whisky these two people were jointly interested in was in the possession of Caruthers. After searching Caruthers' home, he states that he concluded to go to the home of the appellant and see what he could find. In this home he found whisky, and immediately, in the dead of night, he proceeded to the city of Greenwood, and made affidavit for a search warrant to search for whisky, not for a still. He told the justice of the peace the entire transaction of the night. From this testimony we therefore unhesitatingly state that the information upon which the sheriff acted, and which information was conveyed to the justice of the peace, was what he had obtained on his unlawful search of the premises and home of the appellant without a search warrant. In fact, at the very time that this affidavit was made, the sheriff was really in charge of the premises of the appellant. On the unlawful search he took possession of them, and when he left there to procure a search warrant he left his deputies in charge. There was no abandonment by him of the unlawful possession he had taken of these premises without a search warrant. The appellant and his family were not at home. In other words, there was never an abandonment of the unlawful act, but merely a continuation of it after the attempted procurement of a lawful search warrant.

"Evidence obtained under a second search warrant, based on evidence illegally disclosed under a first invalid warrant, is inadmissible, and should be excluded upon objection." Blakemore on Prohibition, p. 361; *U. S.* v. *Boasberg* (D. C.), 283 Fed. 305.

The legal question here presented is similar to that discussed in the case of *Jordan* v. *State* (Miss.), 100 So. 384. In that opinion it is stated:

"The search of appellant's home was begun in an unlawful manner, without a search warrant, and completed under a search warrant based upon the information so unlawfully obtained."

We therefore conclude, first, that the testimony shows that the sheriff in making this affidavit acted upon the information obtained in the unlawful search; second, that the sheriff unlawfully seized the premises of the appellant and held them unlawfully through the entire transaction; that there was no abandonment by him of this unlawful seizure. In legal effect the obtaining of the search warrant was an attempted evasion of the law. No part of this search was lawful. Consequently all of this testimony was inadmissible.

There being no other testimony upon which to sustain a conviction or to prove the *corpus delicti*, it follows that the judgment of the lower court must be reversed and the peremptory instruction requested by the appellant given in this court.

*Reversed, and judgment for appellant.*