## Duncan *v.* State.*

(Division B. Dec. 3, 1928.)

[119 So. 179. No. 27545.]

210

* Corpus Juris-Cyc References: Criminal Law, 16CJ, section 1110, p. 571, n. 93; Intoxicating Liquors, 33CJ, section 376, p. 678, n. 42; As to constitutional guaranties against unreasonable searches and seizures as applied to search for and seizure of intoxicating liquors, see annotation in 3 A. L. R. 1514; 13 A. L. R. 1316; 27 A. L. R. 709; 41 A. L. R. 1539.

*L. T. McKenzie,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

212

PACK, J. Appellant was indicted and convicted of unlawfully having in his possession a still, or the integral

parts thereof, and sentenced to imprisonment for three years in the state penitentiary, from which conviction and sentence he appeals.

The only testimony given for the state was that of a deputy sheriff, which was objected to by appellant on the ground that it was illegally obtained, in that the officer had entered and searched his home without the authority of a search warrant. The deputy sheriff testified, in substance, that he was attempting to serve a warrant on a certain tenant living on the Tucker place for the nonpayment of his road tax; that, upon finding the tenant away from his home, he was advised that he would be probably found at the appellant's home, to which place he went and demanded entrance, the officer's exact testimony on this point being:

"Yes, I knew there was something there and I tried to get the door open and I could not and I called to Will Lund, one of my men, to knock the door down and this boy opened it and I went into the house. He wanted to know if I had a search warrant and I told him no but I was going to walk through his house and I would get one."

While thus in appellant's house, the deputy sheriff found a jug of whisky on the floor, some empty bottles, and also found a gasoline barrel partly filled with mash in the back yard. The barrel was smoked as if it had been over fire. Upon finding these things, the deputy sent a negro boy to the justice of the peace for a search warrant, and the deputy remained, it seems, at appellant's house until the negro boy returned with the warrant. Before the search warrant was delivered to him, the officer had also found, in the yard, two bottles of whisky, which he put in his pocket, and, upon receiving the search warrant, continued his search, and found the worm of a still in a nearby cotton patch by following freshly made tracks over newly-ploughed ground from the house to where the worm was. The worm was smoked

and partly covered with "dough," and showed evidence of recent use.

Peremptory instruction was asked for by the defendant, and refused by the court.

It is conceded by the able assistant attorney-general that, if entrance to the house was unlawful in the first instance, procurement of a search warrant thereafter conferred no authority for the search. It appears, without question, there was no abandonment of the illegal search begun without a search warrant, and that part of the search made thereafter was but a continuation of the unlawful search. Unless the officer had procured the warrant before entering, he could not, by the warrant, legalize a wrongful and unlawful search. *Robinson* v. *State,* 136 Miss. 850, 101 So. 706. In the Robinson case the search was begun, as here, without a search warrant, and, finding some whisky in the defendant's house, the sheriff remained in possession thereof, as did the officer here, while another officer went to the justice of the peace and procured a warrant. Returning with the warrant, the officer continued with the search, which resulted in the finding of the still. The court, speaking through Justice Sykes, said in part:

"We therefore conclude, first, that the testimony shows that the sheriff in making this affidavit acted upon the information obtained in the unlawful search; second, that the sheriff unlawfully seized the premises of the appellant and held them unlawfully through the entire transaction; that there was no abandonment by him of this unlawful seizure. In legal effect the obtaining of the search warrant was an attempted evasion of the law. No part of this search was lawful. Consequently all of this testimony was inadmissible."

The state contends, however, that the officer was lawfully within the house, and, being there on a lawful mission, he had the right to seize anything in defendant's possession that was contraband and unlawful to possess;

and furthermore that, if the officer saw things that would reasonably lead a prudent man to believe a felony was recently committed, he had the right to search the house for evidence of the commission of the felony. We do not think this position tenable. It cannot be said, in the instant case, that the officer's entrance into the house was lawful, thereby giving him the right to seize contraband, as was held in *Reynolds* v. *State,* 136 Miss. 329, 101 So. 485. If a public officer has information upon which to base probable cause that a felony is being committed, or has recently been committed in a house or residence, and has reason to believe that the perpetrator is secreted therein, the officer may enter such building without a warrant and make the arrest. If demand for entrance is refused, he may enter by force; and evidence found on entering the house, incident to such arrest, may be introduced in the prosecution of the owner or occupant of the house. There is no satisfactory proof that the deputy sheriff had any justification for the belief that whisky was being manufactured, or that the appellant had a still, except what he found while unlawfully in appellant's house. *Love* v. *State,* 142 Miss. 602, 107 So. 667.

On account of the incompetency of the evidence, and there being no other evidence to support the conviction, the case must be reversed, and the appellant discharged.

*Reversed, and appellant discharged.*