## BAKER v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2628.

1. **Criminal law ☞586, 1151—Motions for continuance are addressed to trial court's discretion, and rulings thereon are not reviewable, unless discretion abused.**

Motions for continuance are addressed to the discretion of the trial court, and rulings thereon are not subject to review, unless such discretion has been abused.

2. **Criminal law ☞590(2)—Refusing continuance for lack of preparation, because case was called on day following finding of indictment, held not abuse of discretion.**

Denial of motion for continuance, made on ground that case was called for trial on day following finding of indictment, and that defendant had no opportunity to prepare a defense, *held* not abuse of discretion, where the indictment was returned to correct errors in indictment previously returned, charging defendant with substantially the same offense, and to which defendant had entered an appearance, and notice to prepare for trial had been given.

3. **Criminal law ☞680(1)—Order of admitting testimony is largely in trial court's discretion.**

The order in which testimony shall be admitted is largely in the discretion of the trial court.

4. **Criminal law ☞680(1)—Objection that government presented evidence irregularly in prosecution for conspiracy to violate National Prohibition Act held without merit (27 USCA; Criminal Code, § 37 [18 USCA § 88]).**

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA), objection that trial court erred in permitting government to proceed irregularly in the presentation of its evidence *held* without merit, where the evidence was presented in the sequence of the events.

5. **Conspiracy ☞45—Evidence whether vessel, chartered ostensibly for coastwise trade, could have been operated profitably in legitimate coastwise trade, held admissible in prosecution for conspiracy to violate National Prohibition Act (27 USCA; Criminal Code, § 37 [18 USCA § 88]).**

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA) by rum running, evidence respecting whether vessel chartered by defendant, ostensibly for coastwise trade, could have been operated profitably in a legitimate coastwise trade, *held* admissible.

6. **Conspiracy ☞45—Evidence respecting negotiations for purchase of coal for rum-running voyage held admissible in conspiracy prosecution (Criminal Code, § 37 [18 USCA § 88]).**

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA), evidence concerning negotiations for the purchase of coal for vessel alleged to have been used in rum running *held* admissible.

7. **Criminal law ☞406(3)—Accused's statements to government agent held admissible as voluntary admissions tending to prove guilt (Criminal Code, § 37 [18 USCA § 88]).**

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA), statements made by accused in conversation with agent of Department of Justice, which were purely voluntary, and not induced by threats or promises, *held* admissible as admissions tending to prove guilt.

8. **Conspiracy ☞45—Evidence as to finding bottles on vessel held admissible to prove testimony respecting rum running (Criminal Code, § 37 [18 USCA § 88]).**

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA), evidence as to finding of 16 bottles on vessel alleged to have been used in rum running *held* admissible as tending to prove truth of statements by government witnesses as to the handling of 4,600 cases of liquor on the boat.

9. **Criminal law ☞113—Indictment for conspiracy lies where conspiracy was entered into, though overt act was committed in another jurisdiction or in foreign country (Criminal Code, § 37 [18 USCA § 88]).**

If conspiracy be entered into within trial court's jurisdiction, indictment under Criminal Code, § 37 (18 USCA § 88) will lie there, though the overt act was committed in another jurisdiction, or even in a foreign country.

10. **Conspiracy ☞41—Defendant is responsible for acts of co-conspirators committed before as well as after he joined conspiracy.**

The rule of responsibility for acts of co-conspirators includes acts done before defendant joined the conspiracy, as well as acts subsequent to his participation.

11. **Conspiracy ☞41—Overt act need not be proved against all conspirators.**

An overt act need not be proved against all the members of a conspiracy.

12. **Criminal law ☞113—Commission of necessary overt act confers jurisdiction on court where overt act is committed.**

The doing of the overt act prescribed as necessary to the offense of conspiracy confers jurisdiction on court in the district where the overt act is committed.

13. **Conspiracy ☞28—Agreement of two or more to commit crime against United States and overt act in effecting its object is indictable as conspiracy (Criminal Code, § 37 [18 USCA § 88]).**

An agreement of two or more persons to commit any crime against the United States, with an overt act done in effecting its object, is indictable as a conspiracy, under Criminal Code, § 37 (18 USCA § 88).

14. **Conspiracy ☞47—Conviction of captain of vessel for conspiracy to violate National Prohibition Act by rum running held warranted by evidence (27 USCA; Criminal Code, § 37 [18 USCA § 88]).**

Evidence *held* sufficient to sustain conviction of accused captain of vessel for conspiracy

under Criminal Code, § 37 (18 USCA § 88), to violate National Prohibition Act (27 USCA) by rum running.

**15. Criminal law ⊂⊃844(1)—Exception to refusal to give defendant's instructions 1 to 16 held insufficient to put trial court in error for refusing particular instruction.**

Exception to trial court's refusal to give defendant's requested instructions numbered 1 to 16, inclusive, without specifically calling court's attention to failure to give the particular instructions assigned as error, *held* insufficient to compel examination of each instruction, and failure to give such instruction was not reviewable in appellate court.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Charles M. Baker was convicted of conspiracy to violate National Prohibition Act, and he brings error. Affirmed.

Lester S. Parsons, of Norfolk, Va. (Venable, Miller, Pilcher & Parsons, of Norfolk, Va., on the brief), for plaintiff in error.

Paul W. Kear, U. S. Atty., and Alvah H. Martin, Asst. U. S. Atty., both of Norfolk, Va.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge. In June, 1925, one Bernard M. Reaves came to Norfolk, Virginia, and entered into negotiations with Mr. A. G. Bailey, a local manager for the firm of Castner, Curran & Bullitt, for the chartering of a boat, to be used in coastwise trade. As a result of these negotiations, on July 18, 1925, Reaves chartered the steamship Corsica for a period of six months, took possession of the boat, and had her placed and loaded with coal. After the loading and just before leaving the coal dock, the plaintiff in error, who will be referred to here as the defendant, came aboard the boat and took charge of her as master. The papers of the boat show that defendant C. M. Baker, was captain and master of the vessel, and B. M. Reaves, first officer; but upon the voyage it seems that one Artie Baker acted as first mate. Reaves did not accompany the boat when it left Norfolk, but joined it after it reached Bath, Me., where the coal with which it was loaded was discharged.

Reaves then came on board accompanied by two strangers, and shortly after leaving Bath, various officers and members of the crew were sent for and brought to the captain's room, where in the presence of the defendant, C. M. Baker, Reaves, and the two strangers, they were informed that the boat was to be used for rum running, in violation of the prohibition laws of the United States, and asked if they would join in the enterprise. Different officers and members of the crew were offered a bonus for engaging in the illegal transaction. As there seemed to be no objection on the part of anybody, the vessel then started out in search of a certain rum ship. After looking around for a day or two, and failing to find the ship they were looking for, they put into Boston. Leaving Boston, the Corsica again went out looking for the rum ship, which they found off the coast of Nova Scotia. The cargo, consisting of 4,600 cases of various kinds of liquor, was taken on board, and delivered and landed at Oyster Bay, N. Y. It took two nights to unload the cargo in the United States, the work of the unloading being suspended during the daytime. The Corsica then returned to Newport News, where she arrived on August 16, 1925, and where the boat was seized by the agents of the owners. Upon a search of the vessel, 16 quarts of liquor were found as well as numerous broken cases and wrappings for bottles.

In May, 1926, Bernard M. Reaves, the defendant, Charles M. Baker, and Mate Artie Baker, were jointly indicted in the United States District Court for the Eastern District of Virginia, charged with a conspiracy to violate the National Prohibition Act (27 USCA), under section 37 of the Criminal Code (18 USCA § 88), and, Artie Baker not being in custody, the defendants, Charles M. Baker and Reaves, were tried on May 4, 1926. No evidence was offered on behalf of the defendants and the trial resulted in a verdict of guilty, and the defendant, Charles M. Baker, was sentenced to be imprisoned, to which judgment of the trial court the defendant, Charles M. Baker, sued out this writ of error. A demurrer was filed to the indictment below, but upon the argument here that point was abandoned by defendant's counsel. The indictment was clearly sufficient.

[1,2] The second assignment of error is based upon the refusal of the motion for a continuance, said motion being based upon the fact that the indictment was found on May 3, 1926, and the case called for trial on the following day, May 4, and that the defendant had not had an opportunity to prepare a defense. No other grounds for a continuance were presented. This court in the case of Pocahontas Distilling Co. v. United

States, 218 F. 782, has stated the general rule with respect to motions for continuance to be that such motions are "addressed to the discretion of the trial court," and that their denial "constitutes ordinarily no ground for the reversal of a judgment."

"That the action of the trial court upon an application for a continuance is purely a matter of discretion, and not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question." Isaacs v. United States, 159 U. S. 487, 16 S. Ct. 51, 40 L. Ed. 229, and authorities there cited.

It appears that the indictment found on May 3, 1926, was returned in order to correct some errors in an indictment that had been previously returned charging the defendant with substantially the same offense, and to which indictment the defendant had entered an appearance. Notice had been given to prepare for trial. There was no abuse of discretion.

[3, 4] The third assignment of error charges that the court erred in permitting the government to proceed irregularly in the presentation of its evidence. In the case of Fisher v. United States, 2 F.(2d) 843, this court said: "It hardly need be said that a conspiracy is often proved by the overt act. The fact that two men are found together breaking into a bank is indubitable proof that they had agreed to commit the burglary."

"The order in which testimony shall be admitted is largely within the discretion of the trial court." Thiede v. Utah, 159 U. S. 510, 16 S. Ct. 62, 40 L. Ed. 237.

We cannot see any merit in this contention. The story as told by the evidence began with the opening of negotiations for the charter of the boat, and ended with the boat's seizure on its return to Norfolk. It is hard to see how the evidence could have been presented by the prosecution in a more proper sequence.

[5-8] The fourth assignment of error refers: (a) To the admission of evidence with respect to whether or not the boat could have been operated profitably in a legitimate coastwise trade. We think this was a proper matter of inquiry. (b) As to the evidence concerning negotiations with Reaves for the purchase of coal for the rum-running voyage. We think that also was proper. (c) The conversation had with Crawford, the agent of the Department of Justice, by defendant, Baker. This was clearly admissible, as the statements of the defendant were not induced by threats or promises, were purely voluntary, and were admissions tending to prove his guilt. (d) The evidence as to the finding of the 16 bottles on board the Corsica upon its seizure, on returning to Norfolk. This was also admissible as tending to prove the truth of statements made by government witnesses as to the handling of the 4,600 cases of liquor on the boat.

[9] The fifth and sixth assignments of error relate to the action of the court in overruling the motion for a direction of a verdict of not guilty at the end of the testimony on behalf of the prosecution, and in again overruling a similar motion on behalf of the defendant, Charles M. Baker, alone.

"It has been decided that, if the conspiracy be entered into within the jurisdiction of the trial court, the indictment will lie there, though the overt act is shown to have been committed in another jurisdiction, or even in a foreign country." Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90. See, also, Dealy v. United States, 152 U. S. 539, 14 S. Ct. 680, 38 L. Ed. 545; In re Palliser, 136 U. S. 257, 10 S. Ct. 1034, 34 L. Ed. 514.

[10] "The rule of responsibility for the acts of co-conspirators includes acts done before the defendant joined the conspiracy, as well as the acts subsequent to his participation." 5 R. C. L. 1064, and cases there cited.

"One joining a conspiracy after its formation, by contributing to its carrying out with knowledge thereof, would be liable." Rudner v. United States (C. C. A.) 281 F. 516; Thomas v. United States (C. C. A.) 156 F. 897, 17 L. R. A. (N. S.) 720; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106.

"But one may join a conspiracy after it has been formed, and, if he participates knowingly, he becomes a party thereto just as though he conceived the plot. One actor may drop out of the scene altogether, and another take his place, without the conspiracy terminating." Allen v. United States (C. C. A.) 4 F.(2d) 688.

[11] "An overt act need not be proved against all the members of a conspiracy." Bannon v. United States, 156 U. S. 464, 15 S. Ct. 467, 39 L. Ed. 494.

"To sustain a charge of conspiracy, the government need not furnish direct proof of the unlawful plan or agreement, but such charge may be sustained by evidence showing a concert of action in the commission of an unlawful act, or by proof of other facts from which the natural inference arises that the unlawful overt act was in furtherance of

a common design of the alleged conspirators." Windsor v. United States (C. C. A.) 286 F. 51; Davidson v. United States (C. C. A.) 274 F. 285; Remus v. United States (C. C. A.) 291 F. 501.

[12] "The doing of the overt act prescribed as necessary to the offense of conspiracy confers jurisdiction on the court in the district where the overt act is committed." Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

[13] "An agreement of two or more persons to commit any crime against the United States, with an overt act, done in effecting its object, is indictable as a conspiracy." Fisher v. United States (C. C. A.) 2 F.(2d) 843; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278.

[14] The case before us, according to the record, possesses all the evidence necessary to make a conspiracy such as is contemplated by the statute. Here was a transaction that necessarily involved the entire crew of a vessel, including at least seven officers, and involving the commission of an act that was clearly a wholesale violation of the laws of the United States, necessitating the co-operation of the crew of the rum ship and criminal agents within the United States to receive the large cargo handled. The length of time (six months) for which the Corsica was chartered would plainly indicate an intention to continue the use of the boat in "rum running" over the period of the charter, with occasional visits to Norfolk for a legitimate cargo as a blind. There was in the record evidence to the effect that the boat could not have been operated profitably in legitimate trade. It would be hard to conceive of circumstances that would more completely constitute a real conspiracy.

Taking into consideration the almost supreme power and authority of a captain in command of a vessel on the high seas, it is scarcely probable that the defendant would have been employed as captain by Reaves without some understanding with him as to what his course would be, with regard to the criminal operation of the boat. The evidence in the case was sufficient to connect the defendant with the conspiracy at the time of his taking charge of the boat at Norfolk, if the jury saw fit to so consider it. There is no evidence that the defendant in any way protested against the criminal use of the boat under his command. The evidence plainly supports the contention that the defendant was either a party to the conspiracy in its inception or that he joined it knowing of its object.

In addition to this, there was ample evidence to support the contention that the conspiracy was a continuing one and that the boat was brought into the port of Newport News with intention to continue the unlawful use of the boat in the future, and this also would constitute an overt act within the Eastern district of Virginia which would be sufficient to sustain the venue in that district.

Applying the above principles, the verdict was clearly justified by the evidence, the jurisdiction of the court was clear, and there was no admission of improper evidence. [15] Assignments of error 7, 8, and 9 refer to the instructions given the jury by the court and special emphasis is laid upon the failure to give instruction No. 10, requested by the defendant, which was as follows:

"The court charges the jury that the defendants are not only presumed to be innocent, but before they can be found guilty the government must prove their guilt beyond all reasonable doubt as alleged, and the defendants are not required to prove their innocence nor are they required to take the witness stand in their own defense, and their failure so to do is not to be used in any way against them, nor should the jury indulge in any presumption because they did not take the stand, other than that of innocence. The presumption of innocence of the accused starts at the beginning of the trial and remains throughout, while the burden of proof is upon the government and so remains throughout the trial and every stage thereof."

The case of Thiede v. Utah, supra, seems to be exactly in point with the question raised here. There, as here, there was no special exception to the refusal of the court to give the written instructions except as a whole. In the Thiede Case the instructions were numbered from 1 to 21, inclusive; here they were numbered from 1 to 16, inclusive. While a number of specific exceptions were taken at the conclusion of the judge's charge in this case, in response to which the judge again charged the jury, no mention was made of instruction No. 10, and the judge's attention was not called to his omission of this instruction.

In the Thiede Case Mr. Justice Brewer said: "It appears that at the close of the testimony the defendant presented a body of instructions in 22 paragraphs, and asked the court to give them to the jury. They were marked 'refused as a whole except as given,' and the only exception to such refusal was in this language, 'the defendant excepts to the refusal of the court to give the instruc-

tions requested by the defendant, being numbered 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 21.' Such an exception is insufficient to compel an examination of each separate instruction. It is enough that any one of the series is erroneous. In Beaver v. Taylor, 93 U. S. 46, 54 [23 L. Ed. 797] this precise question was presented, and the court said: 'The entire series of propositions was presented as one request; and, if any one proposition was unsound, an exception to a refusal to charge the series cannot be maintained.' * * * It is not the duty of a judge at the Circuit Court, or of an appellate court, to analyze and compare the requests and the charge, to discover what are the portions thus excepted to. One object of an exception is to call the attention of the Circuit Judge to the precise point as to which it is supposed he has erred, that he may then and there consider it, and give new and different instructions to the jury, if in his judgment it should be proper to do so."

Here the attention of the trial judge was not specifically called to his failure to give instruction No. 10. Had the attention of the court been called to its omission to give the instruction, it would undoubtedly have been given, either in the form in which it was requested or in substance, and the point cannot, under the circumstances, be raised here.

"Errors in the instructions should be pointed out specifically before the jury retires, and the court should be given an opportunity of correcting its mistake or oversight. This rule is dictated by public policy, and prevents new trials and unnecessary expense." Allen v. United States (C. C. A.) 4 F.(2d) 688, and cases there cited; United States v. U. S. Fid. Co., 236 U. S. 520, 35 S. Ct. 298, 59 L. Ed. 696.

"Counsel owe it to the court to be specific in their objections." Harris v. United States (C. C. A.) 273 F. 785.

"The court may decline to give any of the instructions prayed for and instruct in his own language." Laber v. Cooper, 7 Wall. 565, 19 L. Ed. 151; Indianapolis, etc., R. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Ruch v. Rock Island, 97 U. S. 693, 24 L. Ed. 1101.

A careful study of the charge of the learned trial judge does not disclose any prejudicial error. It was a fair discussion of the evidence as presented. There was no error in the trial of the case that affected the substantial rights of the defendant, and therefore the judgment of the District Court is

Affirmed.