## UNITED STATES v. WILSON et al.

District Court, N. D. West Virginia. December 24, 1927.

1. **Searches and seizures** &#8996;5—**Defendants' petition for return of prize fight films, after finding of probable cause for seizure for conspiracy to violate statute, will be denied (Cr. Code, § 37 [18 USCA § 88]; 18 USCA § 405).**

   Where United States commissioner, on hearing in prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate Act July 31, 1912, § 1 (18 USCA § 405), forbidding importation and interstate transportation of prize fight films, found that there was probable cause for believing the existence of grounds on which search warrant and warrant of arrest were issued, petition of defendants for return of the seized films, in order that they might be placed on public exhibition for hire and reward, will be denied.

2. **Conspiracy** &#8996;23—"**Criminal conspiracy" is confederation to do something unlawful, either as means or an end.**

   A "criminal conspiracy" is a confederation to do something unlawful, either as a means or an end, and consists of a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Criminal Conspiracy.]

3. **Conspiracy** &#8996;28—**Agreement to commit crime against United States with overt act therein is indictable as a "conspiracy."**

   An agreement of two or more persons to commit any crime against the United States, with an overt act done in effecting its object, is indictable as a "conspiracy."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

4. **Conspiracy** &#8996;47—**Government, to sustain charge of conspiracy, need not furnish proof of unlawful plan or agreement.**

   The government, to sustain a charge of conspiracy, need not furnish proof of unlawful plan or agreement; but such charge may be sustained by evidence showing concert of action in commission of unlawful act, or by proof of other facts authorizing inference that unlawful overt act was in furtherance of conspiracy.

5. **Conspiracy** &#8996;27—**Overt act, to effect object of conspiracy, need not be criminal or unlawful in itself.**

   While an overt act done to effect the object of the conspiracy is essential to render the conspiracy punishable, such an overt act need not be criminal or unlawful in itself, being in reality something apart from conspiracy.

**6. Conspiracy ⬅⟶23—Conspiracy may be continuous agreement, and properly found to continue until consummation or abandonment.**

A conspiracy may be a continuous agreement, and, once established, may properly be found to continue until consummation of purpose or abandonment.

**7. Conspiracy ⬅⟶40—Persons joining and participating in conspiracy after formation are equally guilty with originators.**

Persons joining and participating in conspiracy after its formation are equally guilty and liable with the originators.

**8. Conspiracy ⬅⟶24—In dealing with conspiracy, it is not essential that persons acted together in formal manner found in ordinary lawful transactions.**

It is not essential, in dealing with conspiracy, that persons acted together in a formal manner, with the solemnity or with the deliberation that is found in the ordinary lawful transactions of life; it being sufficient to show the making of an unlawful combination by any manner or means.

**9. Conspiracy ⬅⟶23—Defendants need not have knowledge as to who all members of conspiracy were.**

It is not at all necessary that defendants, charged with conspiracy, should have knowledge as to who all the members of the conspiracy were.

**10. Conspiracy ⬅⟶47—Conspiracy may be proved by circumstantial evidence.**

Defendant's guilt of participation in a conspiracy may be proved by circumstantial evidence.

**11. Conspiracy ⬅⟶48—Facts and circumstances alleged to constitute conspiracy are for jury.**

Facts and circumstances alleged to constitute a conspiracy are matters to be placed before a jury, under proper instructions by the court covering the law, that the jury may say whether the defendants are guilty or not.

**12. Conspiracy ⬅⟶23—Guilt of conspirator is not dependent on knowledge of entire scope of conspiracy.**

Guilt of a conspirator is not dependent on his knowledge of entire scope of conspiracy; it being enough if he knows in a general way what purposes of those engaged in unlawful undertaking are in that respect.

**13. Conspiracy ⬅⟶23—Persons having knowledge of purpose in interstate transportation of prize fight films and furthering such undertaking may be found guilty of conspiracy (Cr. Code, § 37 [18 USCA § 88]; 18 USCA § 405).**

Where defendants, charged with conspiracy under Criminal Code, § 37 (18 USCA § 88), to violate provisions of Act July 31, 1912, § 1 (18 USCA § 405), forbidding importation and interstate transportation of prize fight films, knew even in general way the purposes of those engaged in transportation of films across state line to cause them to be exhibited for pay, and acted to further such undertaking, they may be found guilty as members of such conspiracy.

**14. Prize fighting ⬅⟶1—Law forbidding importation and interstate transportation of prize fight films should be given liberal construction (18 USCA § 405).**

Act July 31, 1912, § 1 (18 USCA § 405), forbidding the importation and interstate transportation of prize fight films, should be given a liberal construction by the court, with a view of carrying out the intention of Congress to prevent the public exhibition thereof.

**15. Criminal law ⬅⟶304(2)—Judicial notice will be taken that picture films are of highly inflammable nature.**

The court takes judicial notice that motion picture films are of a highly inflammable nature, and liable to burn up in use at any time.

Prosecution by the United States against Jack Wilson and others. On petition of certain defendants for a return of prize fight films seized by the United States marshal. Petition denied.

Arthur Arnold, U. S. Atty., of Piedmont, W. Va.

Tom B. Foulk, Handlan, Garden & Matthews, and B. L. Rosenbloom, all of Wheeling, W. Va., for defendants Shafer, Otte, and Dolan.

BAKER, District Judge. On October 24, 1927, Harry A. Weiss, United States marshal for the Northern district of West Virginia, appeared before John W. Kindelberger, United States commissioner of this court, in the city of Wheeling, and made oath and complaint that he had reason to believe and did believe that within a certain building, commonly known and referred to as the Court Theater on Chapline street, in the city of Wheeling, Ohio county, West Virginia, in the Northern district thereof, of which theater George S. Shafer is the manager, there was located certain property, to wit, certain films and other pictorial representations of a prize fight designed to be used, and which might be used, for the purpose of public exhibition, to wit, the Tunney-Dempsey prize fight, held in Chicago, in the state of Illinois, on the 22d day of September, 1927, which were being used as a means of committing a felony, to wit, a violation of section 37 of the Criminal Code (18 USCA § 88) of the United States; that the facts to establish the grounds of probable cause were as follows:

That the owner of said Court Theater and said George Shafer, manager thereof, and divers other persons whose names were unknown, did on and previously to the 24th day of October, 1927, unlawfully, knowingly, and feloniously conspire, combine, and confederate together, each with the other, among themselves, to commit an offense against the

United States, to wit, to violate the provisions of title 18, section 405, of the United States Code Annotated, and known as an act to prohibit the importation and the interstate transportation of films and other pictorial representations of prize fights, and for other purposes, designed to be used, and which might be used, for the purpose of public exhibition in the following manner; that is to say, that George Shafer, and divers other persons whose names are unknown, should and did bring and cause to be brought into the city of Wheeling, Ohio county, West Virginia, from another state of the United States, films and other pictorial representations of a prize fight, to wit, the Tunney-Dempsey prize fight; that in pursuance with said conspiracy, and during the continuance thereof, and in execution and to effect the object of the same, George Shafer and others did, on or about the 21st day of October, 1927, and thereafter, to the 24th day of October, 1927, at Wheeling, West Virginia, unlawfully, knowingly, and feloniously advertise on billboards within the said city of Wheeling the public exhibition of said prize fight films at said Court Theater for the week commencing Monday, October 24, 1927; that on the 24th day of October, 1927, at Wheeling, West Virginia, said George Shafer and others did unlawfully, knowingly, and feloniously publicly exhibit said films and other pictorial representations of the Tunney-Dempsey prize fight, which said films are designed to be used and had been used for the purpose of public exhibition at the Court Theater.

Thereupon a search and seizure warrant was issued by United States Commissioner Kindelberger, commanding Harry A. Weiss to enter the Court Theater, so located on Chapline street, in the city of Wheeling, and search diligently for prize fight films, etc., to seize the same and bring them before said commissioner, and to make due return, etc.

The return of United States Marshal Weiss thereon is as follows:

"Received this writ at Wheeling, West Virginia, on the 24th day of October, 1927, executed the same at the same date, at Wheeling, Ohio county, West Virginia, at the Court Theater, located on Chapline street, said city of Wheeling, by making search as directed herein, and I certify and return that I found three (3) films showing the Tunney-Dempsey prize fight, Nos. 1, 2 and 3, and took the same into my possession, and at the same time I delivered to Dan Dolan, said to be the owner of the films, and to George S. Otte, assistant manager of the Court Theater, a true copy hereof, and giving to the said owner of the films and assistant manager of the Court Theater, a receipt for the films, as I am herein commanded. [Signed] Harry A. Weiss, U. S. Marshal, Northern District of West Virginia."

On the 26th day of October, 1927, Morris D. Traub, special agent of the Department of Justice, appeared before United States Commissioner Kindelberger and made complaint that on or about the 24th day of October, 1927, at Wheeling, Ohio county, in the state of West Virginia, Jack W. Wilson, Daniel J. Dolan, George Shafer, George S. Otte, and divers other persons whose names are unknown to affiant, in violation of section 37 of the Criminal Code of the United States, did unlawfully, knowingly, and feloniously combine, conspire, confederate, and agree together, each with the other, among themselves, to commit an offense against the United States of America; that is to say, to violate the provisions of section 1 of the Act of Congress of July 31, 1912, chapter 263, 37 Statutes at Large, 240, U. S. Code Annotated, title 18, section 405, known as an act to prohibit the importation and interstate transportation of films and other pictorial representations of prize fights, and for other purposes, designed to be used, and which might be used, for the purpose of public exhibition in the manner following; that is to say:

That Jack W. Wilson, Daniel J. Dolan, George Shafer, George S. Otte, and divers other persons whose names are to the affiant unknown, should and did bring and cause to be brought into the city of Wheeling, in the county of Ohio, Northern district of West Virginia, from another state of the United States, films and other pictorial representations of a prize fight designed to be used, and which might be used, for the purpose of public exhibition, to wit, the Tunney-Dempsey prize fight films.

That in pursuance to said conspiracy, and during the continuance thereof, and in execution and to effect the object of the same, the said Daniel J. Dolan, George S. Otte, and George Shafer did, on or about the 21st day of October, 1927, and thereafter to the 26th day of October, 1927, at Wheeling, West Virginia, unlawfully, knowingly, and feloniously advertise on billboards within the city of Wheeling the public exhibition of said prize fight films of said Tunney-Dempsey prize fight in the Court Theater for the week commencing Monday, October 24, 1927.

That in pursuance of said conspiracy, and during the continuance thereof, and in

execution and to effect the object of said conspiracy, Daniel J. Dolan, George S. Otte, and George Shafer, on the 24th day of October, 1927, at Wheeling, West Virginia, unlawfully, knowingly, and feloniously did publicly exhibit at said Court Theater, in Wheeling, West Virginia, the said films and other pictorial representations of said Tunney-Dempsey prize fight, which said films were designed to be used and have been used for the purpose of public exhibition at said Court Theater.

Pursuant to said affidavit and complaint, a warrant of arrest was issued by said Kindelberger, United States commissioner, for Jack W. Wilson, Daniel J. Dolan, George Shafer, George S. Otte, and divers other persons whose names were unknown to the affiant making complaint, commanding said United States Marshal Weiss to apprehend Jack W. Wilson, Daniel J. Dolan, George S. Otte, George Shafer, and divers other persons to affiant unknown, and bring their bodies forthwith before said commissioner to answer said complaint, that they might be dealt with according to law for the said offense.

The return on the back of said warrant of arrest is in words and figures following:

"Received this warrant on the 26th day of October, 1927, at Wheeling, and executed the same by arresting the within named Daniel J. Dolan and George S. Otte at Wheeling on the 26th day of October, 1927, and have their bodies now in court, as within I am commanded. [Signed] Harry A. Weiss, United States Marshal, Northern District of West Virginia."

From the transcript of proceedings sent to this court by United States Commissioner Kindelberger, I find as follows: "On October 26 the defendants waived hearing and gave bond to appear at the May term, 1928, of this court at Wheeling." By reference to the bonds also returned as a part of the record, I find that Daniel J. Dolan entered into a bond in the penalty of $500 for his appearance at the Wheeling May term, 1928, with Fidelity & Deposit Company of Maryland as surety thereon, and that George S. Otte, Jr., entered into a bond in the penalty of $500, with William S. Shafer as his surety, for a like appearance, both of which said bonds were taken and acknowledged before John W. Kindelberger on the 26th day of October, 1927.

Again referring to the transcript of proceedings before the commissioner, looking for the disposition of the prize fight films in question, I find as follows:

"And it further appearing that the property, to wit, three reels of moving pictures films of the Tunney-Dempsey prize fight taken by Harry A. Weiss, United States marshal for the Northern district of West Virginia, is the same as that described in the search warrant issued by me on October 24, 1927, directing said marshal to search the premises of the Court Theater, on Chapline street, in the city of Wheeling, and seize any property therein found used as a means of committing a felony, as directed in said warrant; *and it further appearing that there is probable cause for believing the existence of the grounds on which said search warrant was issued,* * * * it is hereby ordered that the said property, to wit, the three reels of moving picture films of the Tunney-Dempsey prize fight, be retained in the custody of Harry A. Weiss, United States marshal for the Northern district of West Virginia, who seized said property, until otherwise disposed of according to law."

I have gone into the complaints and warrants in detail, and have also covered the transcript of proceedings before Commissioner Kindelberger, to show that at no time before United States Commissioner Kindelberger did the defendants mentioned in said warrants, or either of them, raise any question or objection of any kind or character to either the search warrant or the warrant of arrest, or to the impounding of the three reels of prize fight films as ordered by the commissioner, but, in each instance, waived hearing before the commissioner, and entered into bond for their personal appearance at the next Wheeling May term, 1928, and permitted the fight films to be impounded by the United States commissioner, without even a request that said films be turned over to them under any conditions whatsoever.

This matter first came officially to this court on November 1, 1927, when George Shafer, George S. Otte, and Dan Dolan, defendants in the action before the United States commissioner, presented to this court a petition in which they allege and set out in detail that the accused, George Shafer, is manager of the Theaters Company, a corporation, operating the Court Theater in Wheeling, West Virginia; that George S. Otte is assistant manager of the Theaters Company, a corporation; that Dan Dolan is the owner of the fight films of the Tunney-Dempsey fight held in Chicago on the 22d day of September, 1927, in question in these proceedings.

Said petition claims that Dan Dolan, on the 18th day of October, 1927, purchased said fight films from Jack Wilson in the city of Wheeling, and that he has no knowledge of how the films were transported into West Virginia; that on October 18 or 19, 1927, Dan Dolan commenced negotiations with George Otte, as manager of the Theaters Company, with the view of making a contract for the display of said fight films in said Court Theater; that on Friday, October 21, 1927, Dan Dolan and George Otte entered into an understanding and agreement for the display of said fight films, beginning on October 24, 1927, by the terms of which agreement the first $1,400 received was to be retained by said George S. Otte to cover the expenses of certain other films then and there being exhibited during said week, and that thereafter all box office receipts would be divided equally between Dan Dolan and George S. Otte; that, at the time Dan Dolan commenced negotiations with George S. Otte relative to these fight films, Dolan advised Otte that he had bought the pictures in Wheeling, Ohio county, West Virginia; that they could be legally shown in the state of West Virginia, because they had been purchased by said Dan Dolan within the state; that George S. Otte immediately advertised that said prize fight films would be displayed in the Court Theater on the 24th of October, 1927; and further admits "that on said date the said films were displayed before an audience of the public who paid admission to attend said display; that during the display of said films Harry A. Weiss, United States marshal for the Northern district of West Virginia, together with deputy marshals, under a search and seizure warrant seized and removed said films from said Court Theater, and from the possession, custody, and control of petitioner George S. Otte and his copetitioners, Shafer and Dolan."

Petition further alleges that the films in question are in the custody and control of the United States marshal, who is an officer of this court; therefore, that said films are in the custody and control of this court; that said United States marshal refuses to deliver the custody of said films to petitioners, although requested so to do; that said films are being held by this court for use as evidence in the charge contained in the said search and seizure warrant of conspiracy; that said films are not contraband, and are not subject to confiscation under the laws of the United States, and that petitioners have a legal property right therein, and that said films are being unlawfully and illegally retained by said marshal and by this court.

Petition further states: "Your petitioners further say that they desire the return of said films to their custody and control for the purpose of displaying said films to the public of the city of Wheeling and vicinity for hire and reward;" that petitioners have gone to great expense in lithographing and advertising, and other promotive expenses incident to the showing of said films, and that they will suffer irreparable inconvenience and damage if longer restrained and prohibited from securing the custody and control of said films and displaying the same to the public for hire and reward, etc.

The prayer of said petition is that oyer be granted over said search and seizure warrant, and that said films may be brought into the actual presence of this court; that a proper bond be fixed by this court, conditioned upon the return of said films for use as evidence, with a further condition that said bond be discharged, if at any time prior to the desire to use thereof as evidence the said films be returned to the custody and control of the proper officers of this court.

The United States attorney moves that the petition for the return of the fight films be dismissed, because there are no allegations in said petition, or in any paragraph thereof, which question the validity of the search and seizure of said prize fight films by Harry A. Weiss, United States marshal, and for various other reasons set out in said motion.

[1] Query: Should the court at this stage of the proceedings grant the prayer of the petitioners, in view of the finding of Commissioner Kindelberger that there is probable cause for believing the existence of the grounds upon which search warrant and warrant of arrest were issued, and in view of the admissions in the petition that the return of said films is desired, that they may be placed upon public exhibition for hire and reward?

Since the search warrant and the warrant of arrest of the petitioners are based upon conspiracy charges to violate the act of Congress forbidding the transportation from one state into another of fight films for the purpose of publicly showing the same, and since the seizure of the films in question in this proceeding was made, and they were impounded by the United States commissioner as evidence upon the charge of conspiracy, let us first look into the law and decisions relating to criminal conspiracy.

[2] A criminal conspiracy is a confedera-

tion to do something unlawful, either as a means or an end. It may be shortly defined as a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means.

[3] An agreement of two or more persons to commit any crime against the United States, with an overt act done in effecting its object, is indictable as a conspiracy. Williamson v. U. S., 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Fisher v. U. S. (C. C. A.) 2 F.(2d) 843; Baker v. U. S. (C. C. A.) 21 F.(2d) 903.

### Government Need Not Furnish Direct Proof of Agreement.

[4] To sustain a charge of conspiracy, the government need not furnish proof of the unlawful plan or agreement, but such charge may be sustained by evidence showing concert of action in the commission of the unlawful act, or by proof of other facts from which the natural inference arises that the unlawful overt act was in furtherance of a common design of the alleged conspiracy. Davidson and others v. U. S. (C. C. A.) 274 F. 285; Windsor v. U. S. (C. C. A.) 286 F. 51; Remus v. U. S. (C. C. A.) 291 F. 501; Allen v. U. S. (C. C. A.) 4 F.(2d) 688; Keith v. U. S. (C. C. A.) 11 F.(2d) 933. A conspiracy is often proven by the overt act. Fisher v. U. S. (C. C. A.) 2 F.(2d) 843; Baker v. U. S. (C. C. A.) 21 F.(2d) 903.

[5] While an overt act done to effect the object of the conspiracy is essential to render the conspiracy punishable, such an overt act *need not be criminal or unlawful in itself*. U. S. v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; U. S. v. Holte, 236 U. S. 140, 35 S. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281; Gruher v. U. S. (C. C. A.) 255 F. 474; Rudner v. U. S. (C. C. A.) 281 F. 518; Vannata v. U. S. (C. C. A.) 289 F. 424; Rumely v. U. S. (C. C. A.) 293 F. 532. Overt acts are in reality something apart from the conspiracy, being acts to effect the object thereof. Joplin Mercantile Co. v. U. S., 236 U. S. 531, 35 S. Ct. 291, 59 L. Ed. 705. It is sufficient if the act done had for its purpose the furtherance of the unlawful scheme. Houston v. U. S. (C. C. A.) 217 F. 852.

[6, 7] A conspiracy may be a continuous agreement, and, once established, may properly be found to continue until consummation of purpose or abandonment. Persons joining and participating in the conspiracy after its formation are equally guilty and li-

able with the originators. Calcutt v. Gerig (C. C. A.) 271 F. 220, 27 A. L. R. 543; Rudner v. U. S. (C. C. A.) 281 F. 516; Nyquist v. U. S. (C. C. A.) 2 F.(2d) 504.

[8] Certainly it is not essential, in dealing with conspiracy, that the persons acted together in a formal manner, with the solemnity or with the deliberation that is found in the ordinary lawful transactions of life. That is not at all essential in determining whether an agreement is a confederation or a conspiracy of the character condemned *by the statute. It suffices in any event that there be shown by any manner of means the making of an unlawful combination, namely, that the thing sought to be accomplished may be evidenced by acts, conduct, association, contracts not in the open—secretly, clandestinely—frequently by mere matters of conduct, by acts circumstantial in their character; and this situation arises, I believe, in a majority of cases for the establishment of the crime of conspiracy. Lawlor v. Loewe, 235 U. S. 522, 35 S. Ct. 170, 59 L. Ed. 341; Rudner v. U. S. (C. C. A.) 281 F. 516; Zottarelli v. U. S. (C. C. A.) 20 F.(2d) 795; 5 R. C. L. 1065.

[9] It is not at all necessary that defendants should have knowledge as to who all the members of the conspiracy were. Zottarelli v. U. S. (C. C. A.) 20 F.(2d) 795. The range of the character of conspiracy, the range of the means of evidencing it, is nearly as broad as the possibilities of men to agree upon means and methods of acting together.

[10] Guilt can be based, and must necessarily be based, in many conspiracy cases, upon purely circumstantial evidence; in many cases upon direct and positive testimony, together with circumstantial evidence. Crimes are not ordinarily committed in the open. They are sought to be concealed. Therefore the law wisely determines that society will not be at the mercy of criminals who conceal their purposes in attempting their acts; therefore circumstantial evidence is a well-recognized fiction of the law for the conviction of crime.

[11] *The facts and circumstances are matters to be placed before a jury, under proper instructions by the court covering the law, that the jury may say whether the defendants are guilty or not guilty.* Let us ever keep before us the fact that any person who knowingly contributes to the success of any plan so unlawfully made, by encouraging, advising, or sustaining the same, is equally guilty with the other, and such person is

bound by the acts, declarations, and statements of the original conspirators.

[12] The guilt of a conspirator is not dependent upon his knowledge of the entire scope of the conspiracy. It is enough if a man, understanding that people are banded together to break the law, and knowing in a general way what the purposes of those engaged in the undertaking are in that respect, does acts to further their undertaking and carry out their scheme; he becomes a member of the conspiracy and is guilty. Williamson v. U. S., 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Pierce v. U. S., 252 U. S. 239, 40 S. Ct. 205, 64 L. Ed. 542; McDonnell v. U. S. (C. C. A.) 19 F.(2d) 801.

In arguing the motion under consideration, the United States attorney insisted that the films in question have been used as a means of committing a felony; that such films represent the physical evidence of the crime charged in the warrants, and are the means by which said crime was committed; that the retention of said films by the government is necessary for use in the further investigation and prosecution of the conspiracy charge; that films are of a highly fragile nature, and may easily be broken, stolen, or damaged, and, if returned to petitioners upon the execution of a bond, this fact would not insure the return of said films with any and all identification marks thereon in condition for the government to use as evidence.

This contention seems to be borne out by the holding of the Supreme Court of Connecticut in State v. Magnano, 97 Conn. 543, 117 A. 550. The United States attorney may be mistaken in his belief that the petitioners are in fact parties to a conspiracy to transport the fight films across the state line into West Virginia, but petitioners must have known that section 405, title 18, United States Code Annotated, had been violated by some one; otherwise, the fight films could not be in Wheeling, the fight having taken place in the city of Chicago, in the state of Illinois.

[13] They must have further known that the only object in transporting the films across the state line into West Virginia was to cause them to be exhibited for pay; and, knowing even in a general way the purposes of those engaged in the transportation, if petitioners acted to further such undertaking and carry out such scheme, a jury may find that they became members of a conspiracy and are guilty. McDonnell v. U. S., supra.

[14] Congress, when it passed the prize fight film act, intended to prevent the public exhibition of prize fight films. A liberal construction of this statute should be given by the court, with a view of carrying out this intention of Congress, as against the alleged property right of petitioners. The individual rights of petitioners alleged in this case are vastly overweighed by the interest of society generally.

[15] In addition to the reasons set up by the government, the court takes judicial notice that picture films are of a highly inflammable nature, and liable to burn up in use at any time, and that they might be stolen from petitioners, if returned to them, realizing that the return of the films in question to the petitioners would be returning to the very parties who are alleged to have been members of this conspiracy the implements of crime by which this violation is alleged to have been committed. A return of the fight films in question to the petitioners must necessarily be for their use in public exhibition, as petitioners pray for their return for that purpose alone. Such a reason by this court would be tantamount to the court's permission to petitioners to make financial gain out of an alleged conspiracy to violate the prize fight film act.

This court cannot see its way clear so to do. Order may go, refusing the prayer of petition, and dismissing the same.