## UNITED STATES v. KENNEDY et al.

District Court, D. Minnesota, Fifth Division.

Dec. 3, 1930.

Lewis L. Drill, U. S. Atty., and Robert V. Rensch, Asst. U. S. Atty., both of St. Paul, Minn.

William M. Nash, of Minneapolis, Minn., for defendant Kennedy.

SANBORN, District Judge.

Owing to the indisposition of Judge Cant, who tried the case, counsel for the defendant Kennedy and for the government very kindly consented that the motion might be heard by me upon the transcript of the record.

The defendant Kennedy, with some eight other defendants, was indicted for a conspiracy to violate the National Prohibition Act by setting up on the Paul Dorow farm, in Pine county, a distillery for the manufacture of intoxicating liquor, and by manufacturing and selling intoxicating liquor. Kennedy was tried alone at a term of this court held in Duluth on May 21, 1930.

There are numerous errors assigned by the defendant. The principal points which he makes are these:

(1) That the court erred in refusing to grant his motion for a continuance upon the ground that he was not physically able to

434

stand trial, that he had not had time to prepare for trial, and had not taken a deposition of a material witness, and that certain of his codefendants who would testify in his behalf were not present.

(2) That the evidence was insufficient to show that what was manufactured in the distillery was intoxicating liquor; that the identification of Kennedy was insufficient.

(3) Errors in the charge of the court.

(4) Misconduct on the part of the United States attorney.

■ The action of a trial court upon an application for a continuance is purely a matter of discretion, and is not subject to review unless it be clearly shown that such discretion was abused. Isaacs v. United States, 159 U. S. 487, 16 S. Ct. 51, 40 L. Ed. 229; Baker v. United States (C. C. A.) 21 F.(2d) 903; Woods v. United States (C. C. A.) 26 F.(2d) 63.

■ The fact that the defendant Kennedy did stand trial has a tendency to show that he was physically able to do so. The affidavit in support of the motion for a continuance is insufficient in so far as it relates to the absence of defendant Kennedy's witnesses. The names of the witnesses are not stated, nor does the affidavit contain any information as to what it is claimed they would testify to if produced. The case was an old case, and had been continued from a previous term of court. It is probably true that the defendant Kennedy was inadvertently absent at the opening of the term, and his presence was secured by the issuance of a bench warrant. However, I am unable to find any abuse of discretion in requiring him to go to trial. The government had all its witnesses present, and a continuance would have been a serious inconvenience to the court and to the government.

■ Counsel for the defendant is mistaken when he says that there was no evidence as to the character of the product of the distillery except that it was moonshine whisky. On page 188 of the transcript appears this testimony of Fritz Molonofsky:

"Q. How did you happen to go there? A. Well, I tell you, there was a fellow named Leo, and he picked me up and said, come on—I was about half crocked and I drove out there and I have been crocked ever since.

"Q. Do you mean by crocked, intoxicated? A. Since I was out there working.

"Q. You are not intoxicated now? A. No, hell, no.

"Q. By meaning crocked, you mean up until what time? A. Up until about the 26th of June or July rather.

"Q. Until the time of the fire? A. Yes.

"Q. What were you drinking? A. What we was making."

And again, on page 197:

"Q. Are you familiar with the taste of the ordinary liquor, such as whiskey? A. Yes, I have had whiskey.

"Q. Are you familiar with the taste of moonshine whiskey and alcohol? A. Yes, sir, I tasted all that.

"Q. Are you able to tell us what this was that was coming out of this still? A. We called it white mule, but it is moonshine.

"Q. It made you intoxicated when you drank it? A. Oh, yes.

"Q. Would you say it was a pretty good grade of moonshine or not? A. It passed, all right."

There is other testimony which would amply justify the inference that the product produced at the distillery was intoxicating liquor.

The only confusion in the reference to Kennedy's identity was merely as to the name he used. The fact that some of the witnesses saw him on his way to Duluth affected the weight of their testimony and not its admissibility.

■ No exception was taken to the charge of the court. No instructions were asked for. The court assumed in his charge, as apparently did the defendant Kennedy in his testimony, that a still was being operated on the Paul Dorow farm, as testified to by the various witnesses for the government. The defendant Kennedy had stated that he understood that Dave Weinstein was connected with such a distillery; Weinstein being one of his codefendants. There was nothing to contradict the testimony of any of the witnesses as to there having been such a distillery. The defendant Kennedy's claim was that he was never in any way connected with its operation; that he merely acted as an agent when the farm was originally purchased by the defendant Martin, and received a small commission for his services at that time. The court was justified in assuming that there was no dispute in the evidence as to the existence of the distillery on the farm, and that the only issue was as to

whether the defendant Kennedy was one of those who were jointly engaged in erecting and operating it.

Certain isolated portions of the charge are complained of. Standing alone, they may be subject to some criticism. This portion of the charge is particularly referred to:

"You are simply to use your good sense, and tell us what the truth is—whether this particular man, this defendant, was concerned in and a party to the carrying on of the operations in that barn, at the time which has been referred to in the evidence. If he was not, let him go. If he was, hold him."

In view of the fact that the testimony indicated that several persons were interested in operating the distillery, it is very apparent what the court had in mind when he used the language quoted. He meant that, if the jury found that the defendant Kennedy jointly with the others was concerned in and a party to the carrying on of the unlawful enterprise, he could be found to be guilty of conspiracy as charged in the indictment.

Taking the charge as a whole, it seems to me that it is full and fair and that the jury could not have been misled as to what the law was and as to what the evidence must show before a verdict of guilty could be returned. In view of the fact that the defendant asked for no instructions and took no exceptions, it would be only a very serious error which could be held to justify a new trial.

So far as misconduct of counsel is concerned: The record shows that during the argument of counsel for the government, defendant's counsel said: "The defendant at this time takes exception to the remark of counsel to the effect that there is testimony in this case that Bennie Binder has pleaded guilty and is in the penitentiary." (Bennie Binder was one of the defendants named in the indictment.) The government's counsel then stated: "May the record show that I state to the jury that if I have misstated the testimony, to utterly disregard it, and that it is not intentional on my part."

The record did not show that Bennie Binder had pleaded guilty or was in the penitentiary. The record did show that Dave Weinstein had pleaded guilty. Weinstein was also a defendant. It is very evident that counsel for the government inadvertently misquoted the evidence, but, in view of his remarks when it was called to his attention, I am unable to hold that this error consti-

tuted misconduct or was prejudicial to the rights of the defendant.

I have read the record in this case very carefully. There are few objections and fewer exceptions. There is abundant evidence to sustain the verdict, and nothing of any consequence that I can find which would warrant a retrial of the case.

The motion for a new trial is denied.