940 F.2d 653
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Iyad Jamil ABU-MAIZAR, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mahmmud Khaleel KIRDASI, Defendant-Appellant.
 Nos. 90-5085, 90-5700.
 United States Court of Appeals, Fourth Circuit.
 Argued March 7, 1991.
Decided Aug. 14, 1991.
As Amended Aug. 26, 1991.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-89-182-C)
 Kevin Lee Barnett, Weinstein & Sturges, P.A., Charlotte, N.C., for appellant Abu-Maizar;
 Lawrence Wilson Hewitt, James, McElroy & Diehl, Charlotte, N.C., for appellant Kirdasi;
 William A. Brafford, Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and JOHN A. MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Iyad Abu-Maizar and Mahmmud Khaleel Kirdasi appeal from district court judgments of conviction for offenses under 18 U.S.C. Sec. 371 and 18 U.S.C. Sec. 1029(a)(2). We conclude that the district court did not err in denying the defendants' motions for judgments of acquittal, that the evidence supports the verdicts, and we affirm the convictions.
 
 
 2
 On April 21, 1989, Philip R. McKinnon inadvertently left a credit card at the Circle K convenience store located on Monroe Road in Charlotte, North Carolina. In the days that followed, the card was used to make a series of unauthorized charges at two businesses in Charlotte in the total amount of $1,362.01.[1] Abu-Maizar, Kirdasi, and Jaser Mahmoud Abu-El Hawa were subsequently indicted in connection with these transactions on charges of conspiring to use an unauthorized access device in violation of 18 U.S.C. Sec. 371 and the substantive violation of the unauthorized access device statute, 18 U.S.C. 1029(a)(2). While El Hawa apparently became a fugitive and could not be located for trial, Abu-Maizar and Kirdasi were brought to trial before a jury. During the trial, at the close of the government's evidence, the defendants presented motions challenging the sufficiency of the evidence against them and requesting judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied these motions and the jury subsequently found the defendants guilty on both counts of the indictment. In judgments entered on August 16, 1990, the defendants were given sentences involving probation and fines. This appeal followed.
 
 
 3
 The defendants contend that the district court erred in denying their motions for judgments of acquittal because the evidence presented against them was insufficient to support their convictions. We must determine whether "there is substantial evidence, taking the view most favorable to the Government, to support [the verdict of the jury]." Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 4
 According to the evidence presented at trial, Jaser Abu-El Hawa was an employee of the Circle K store on Monroe Avenue and was working in the store on the evening that the credit card was left by McKinnon sometime between 6:00 and 8:30 p.m. After 8:30 on that evening, El Hawa was the only employee on duty at the Monroe Avenue store. On that same evening, defendant Mahmmud Khaleel Kirdasi was working alone at another Circle K store located on Freedom Drive in Charlotte. According to Kirdasi, a man who identified himself as "Jamel Ossman" came into the Freedom Drive store several times between 10:30 p.m. and 1:00 a.m.. Ossman presented a credit card to make three purchases during these visits.
 
 
 5
 At trial, Kirdasi identified a photograph of the man who called himself Ossman; the same photograph was identified by another witness as being El Hawa. Kirdasi testified that he noticed, while Ossman was making his purchases, that the credit card presented to him by Ossman had the name "Rod McKinnon" on it. On crossexamination, Kirdasi further admitted that he had coded two of the credit card slips to indicate purchases of gasoline when Ossman had not in fact purchased any gasoline. Kirdasi maintained that the credit card slips, which were variously signed in the names of "Rod McKimron," "Rod McKamrin," and "Rod McKomerl," were signed by Ossman. The government, however, presented testimony by a Secret Service handwriting expert, who gave an opinion to the effect that while the handwriting evidence was not "conclusive," it suggested that Kirdasi had executed the purported signatures of McKinnon on the credit card slips.
 
 
 6
 Kirdasi further testified that after the closing of the Freedom Drive store, he invited Ossman to spend the night in his home. The next morning, according to Kirdasi, he and Ossman decided to go to the Eastland Exxon service station on Central Avenue in Charlotte. Kirdasi drove to the station in a Chevrolet Camaro and Ossman drove a blue Oldsmobile station wagon with wood-grain panelling. In his account of what followed, Kirdasi claimed that he merely introduced Ossman to one of the Exxon attendants and took no part in any credit card transactions. He stated that it was Ossman who purchased a battery and eight tires in two separate credit card transactions and who had the tires loaded into Ossman's car. The government, in contrast, presented testimony from a handwriting expert to the effect that Kirdasi probably executed the handwriting found on two Exxon service orders related to the purchase of the tires, as well as on the credit card slips containing the purported signature of McKinnon. Moreover, an Eastland Exxon employee testified that the driver of the Camaro, and not the driver of the Oldsmobile station wagon, produced the credit card and purchased the tires. Another station employee also stated that Kirdasi signed a credit card slip during this visit and that four of the tires were placed in Kirdasi's Camaro.
 
 
 7
 Further evidence adduced at trial included testimony that later on the same day, April 22, defendant Iyad Jamil Abu-Maizar visited the apartment of El Hawa, with whom Abu-Maizar had lived for a period of time prior to the events in question. Shortly after this visit to El Hawa's apartment, Abu-Maizar proceeded to Eastland Exxon, where he met up with El Hawa. Witnesses testified that at this time, El Hawa was driving a blue Oldsmobile station wagon with wood grain panelling. This description was identical to that given by witnesses of the car driven by "Ossman" on the earlier visit to the station. Abu-Maizar pulled his car into the garage and new tires were installed on his car. According to his version, Abu-Maizar then filled out a service order in the false name of "Robert Johnson" and gave a fictitious address. Abu-Maizar nevertheless claimed that he paid eighty dollars in cash for the tires and maintained that he did not know of or participate in the execution of the credit card slip bearing the purported signature of Rod McKinnon with which these tires were purchased. In contrast to this version, one witness testified that he saw Abu-Maizar in the office of the Exxon station handing cash to the cashier, but specifically observed that the payment consisted of only a single bill. The witness was unable to tell whether this single bill was a payment for tires or merely for gasoline. In addition, an Exxon employee testified that no cash payments were made for any of the tire purchases involved in this case.
 
 
 8
 It is well-recognized that in order to establish the existence of a conspiracy, the government must prove "an agreement among the defendants to do something which the law prohibits; knowing and willful participation by the defendants in the agreement; and an overt act by the defendants in furtherance of the purpose of the agreement." United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 484 U.S. 969 (1987), cert. denied, 485 U.S. 991 (1988). The defendants argue that the government failed to establish that they were involved in a conspiracy under 18 U.S.C. Sec. 371 or credit card fraud under 18 U.S.C. Sec. 1029(a)(2). In essence, they contend that there was not sufficient evidence of an agreement between the defendants from which the jury could infer a conspiracy. In addition, they claim that the evidence failed to establish that Abu-Maizar used or knew about the credit card involved in the purchase of the tires put on his car. The defendants argue that if the amount of the charge for the last set of tires is subtracted from the total amount of the unauthorized charges, the $1,000 requirement for a substantive violation of 18 U.S.C. Sec. 1029(a)(2) would not be satisfied. The government, in turn, has conceded that there is no direct evidence of the agreement between the defendants, but properly argues that the agreement and the defendants' knowing and willful participation may be inferred from circumstantial evidence. See United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991).
 
 
 9
 Reviewing the evidence under the applicable standard, we note that testimony presented at trial placed either Ossman or El Hawa at each of the important events in this case, namely, the loss of the credit card at the Monroe Road store, the unauthorized transactions at the Freedom Road store, and the two separate sets of unauthorized transactions at the Eastland Exxon. Based upon the testimony discussed previously, we believe that there was substantial evidence, including even photographic identification, from which the jury could reasonably have found that Ossman and El Hawa were one and the same person. When viewed in this light, the evidence supports the conclusion that El Hawa obtained the lost credit card and then engaged in the series of unauthorized transactions under scrutiny in this case.
 
 
 10
 With regard to Kirdasi, the evidence established that he was present with El Hawa during unauthorized transactions at the Freedom Drive Circle K and the Eastland Exxon station. Although Kirdasi gave an explanation of his role in these transactions, the jury did not have to credit his testimony. Rather, it could have credited the testimony indicating that Kirdasi himself signed credit slips, that Kirdasi produced the credit card on at least one occasion, and that Kirdasi received some of the items bought with the lost credit card. From this testimony, the jury might reasonably have inferred that Kirdasi knowingly agreed to join with El Hawa in the use of the lost credit card and in fact engaged in the execution of several unauthorized credit card transactions.
 
 
 11
 As to Abu-Maizar, the jury had before it evidence that he joined El Hawa at the Eastland Exxon station and wrote a false name and address on the service order for four tires purchased through the unauthorized use of the credit card. The jury also had before it testimony stating that shortly before engaging in this action at the Exxon station, Abu-Maizar had visited the apartment of El Hawa. While Abu-Maizar professed to have had no knowledge that a credit card was used to buy the tires, the jury could have chosen to give little weight to his claim that he paid eighty dollars in cash for four tires. His claim was contradicted by an Eastland Exxon employee and apparently contradicted by an eye witness. From the evidence, the jury could have found a sufficient basis to conclude that Abu-Maizar knowingly agreed with El Hawa to participate in the use of the lost credit card and did in fact participate in an unauthorized transaction.
 
 
 12
 The evidence, in short, was sufficient to support a jury finding of knowing agreement between each defendant and El Hawa, who put together a conspiracy to use the lost credit card for unauthorized transactions involving the defendants. The evidence was likewise sufficient to sustain a finding that both defendants acted with El Hawa pursuant to this agreement by engaging in unauthorized credit card transactions. By joining in the conspiracy, each defendant became liable both for the acts of his co-conspirators done before he joined the conspiracy and the acts subsequent to his participation. See Baker v. United States, 21 F.2d 903, 905 (4th Cir.1927), cert. denied, 276 U.S. 621 (1928). The prosecution did not need to establish that the defendants conspired directly with each other, see United States v. Sanchez Solis, 882 F.2d 693, 696 (2d Cir.1989), or that each conspirator knew all of the other conspirators, see United States v. Auerbach, 913 F.2d 407, 415 (7th Cir.1990). We therefore affirm the convictions of the defendants on the conspiracy count of the indictment.
 
 
 13
 Likewise, we are of opinion that the defendants' convictions on the substantive charges were not error. As participants in the conspiracy to execute unauthorized transactions using the lost credit card, Kirdasi and Abu-Maizar need not have committed all of the acts constituting the underlying substantive offense in order to be convicted on the substantive charges. See Pinkerton v. United States, 328 U.S. 640 (1946). Rather, the acts committed by the co-conspirators in furtherance of the conspiracy, namely the charges made by El Hawa, Kirdasi, and Abu-Maizar in the aggregate amount of over $1,000, are attributable to both of the defendants for purposes of holding them responsible on the substantive charge contained in the indictment. We are therefore of opinion that the jury had before it sufficient evidence to sustain the defendants' conviction under 18 U.S.C. Sec. 1029(a)(2).
 
 
 14
 Accordingly, the judgments of the district court are
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The proof showed $1,362.01, the indictment was for $1,198.78; both sums are over the $1,000.00 the statute requires. See 18 U.S.C. Sec. 1029(a)(2)